Robert Emert

2351 Vista Lago Terrace

Escondido, CA 92029

760-612-9328



**District Court of the United States**

**Southern District of California**

'23 CV 1723 BAS MSB

| | |
|---|---|
| Robert Emert, | **Plaintiff's Request for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction Under 42 U.S.C. § 1983** |
| **Plaintiff,** | |
| **vs.** | |
| | **SD SUPERIOR COURT: SCD297230** |
| **San Diego Superior Court – both Criminal and Family/Civil Courts** | |
| | **SD SUPERIOR COURT: 19FL010852N** |

# Contents

Table of Authorities .................................................................................... 3

Introduction............................................................................................... 6

Requested Relief ...................................................................................... 9

Legal Standard......................................................................................... 10

Statement of Facts .................................................................................. 12

Memorandum of Points and Authorities ................................................. 13

Likelihood of Success on the Merits ....................................................... 13

Due Process Violation.............................................................................. 13

Legal Basis: .............................................................................................. 13

Facts:........................................................................................................ 14

First Amendment Violation...................................................................... 15

Legal Basis: .............................................................................................. 15

Facts:........................................................................................................ 16

Irreparable Harm ..................................................................................... 16

Facts:........................................................................................................ 16

Legal Basis: .............................................................................................. 17

Balance of Equities .................................................................................. 19

Facts:........................................................................................................ 19

Legal Basis: .............................................................................................. 19

Public Interest .......................................................................................... 20

Facts:........................................................................................................ 20

Legal Basis: .............................................................................................. 20

Narrowly Tailored Scope.......................................................................... 21

Facts:........................................................................................................ 21

Legal Basis: .............................................................................................. 21

No Adequate Remedy at Law ................................................................... 21

Facts:........................................................................................................ 22

Legal Basis: .............................................................................................. 22

Argument.................................................................................................. 22

Conclusion................................................................................................ 24

Certificate of Service................................................................................ 25

# Table of Authorities

**Cases**

Armstrong v. Manzo, 380 U.S. 545 (1965)

BE & K Construction Co. v. NLRB, 536 U.S. 516 (2002)

Bill Johnson's Restaurants v. NLRB, 461 U.S. 731 (1983)

Brady v. United States, 397 U.S. 742 (1970)

Brown v. County of San Bernardino, 2014 WL 1477315 (C.D. Cal. Apr. 14, 2014)

Brooks v. Parkerson, 265 Ga. 189 (1995)

Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009)

Dahl v. HEM Pharmaceuticals Corp., 7 F.3d 1399, 1403 (9th Cir. 1993)

Doe v. Shapiro, 302 F.R.D. 44 (D. Conn. 2014)

Doe v. Xavier Univ., 2020 WL 4043831 (S.D. Ohio July 17, 2020)

Elrod v. Burns, 427 U.S. 347 (1976)

Goldberg v. Kelly, 397 U.S. 254 (1970)

Grannis v. Ordean, 234 U.S. 385 (1914)

Hartman v. Moore, 547 U.S. 250 (2006)

Hernandez v. Sessions, 872 F.3d 976 (9th Cir. 2017)

In re Kelsey S., 1 Cal. 4th 816 (1992)

Jackson v. Indiana, 406 U.S. 715 (1972)

Keates v. Koile, 883 F.3d 1228 (9th Cir. 2018)

Kelson v. City of Springfield, 767 F.2d 651, 656 (9th Cir. 1985)

Mathews v. Eldridge, 424 U.S. 319 (1976)

McMillen v. New Caney Indep. Sch. Dist., 939 F.2d 340, 343 (5th Cir. 1991)

Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)

Nelson v. NASA, 530 F.3d 865, 881-82 (9th Cir. 2008)

Obergefell v. Hodges, 576 U.S. 644 (2015)

Palko v. Connecticut, 302 U.S. 319 (1937)

Powell v. Mueller, 643 F. Supp. 2d, 251, 257 (D. Mass. 2009)

R.K. v. Hayward Unified Sch. Dist., No. 3:14-cv-04728-TEH, 2015 WL 4939460 (N.D. Cal. Aug. 14, 2015)

Roberts v. United States Jaycees, 468 U.S. 609 (1984)

Rodriguez v. Robbins, 715 F.3d 1127 (9th Cir. 2013)

Sampson v. Murray, 415 U.S. 61, 88 (1974)

Santosky v. Kramer, 455 U.S. 745 (1982)

Stanley v. Illinois, 405 U.S. 645 (1972)

Stormans, Inc. v. Selecky, 586 F.3d 1109, 1140 (9th Cir. 2009)

Tennessee v. Lane, 541 U.S. 509 (2004)

Troxel v. Granville, 530 U.S. 57 (2000)

Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981)

Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7 (2008)

# Introduction

I have had all my parental rights illegally taken from me where I, my evidence, my witnesses and ADA coordinator's were denied access to my own hearings and trial based on a biased retaliatory ruling. This default judgment has cascaded into a farce of a criminal case where I am being charged as a felony "kidnapper" and going to have my parental rights terminated with possible future illegal incarceration. I have almost died of a massive heart attack due to this injustice and my 16 year old son is distraught begging to come home to me and my 14 year old daughter won't talk to me. This is irreparable harm and an egregious injustice caused by the moral turpitude of a few that this honorable federal court needs to stop immediately in the form of an injunction or other equitable means.

Currently, both the criminal and family trial courts are obstructing any semblance of my right to petition on my behalf, which is a blatant disregard for our first Amendment to our US Constitution. I have a hearing in both the criminal and family trial court on 09/21/23 and have been trying to coordinate and cooperate with everyone just to be ignored so the unethical can continue to railroad this insane narrative and agenda against me. I file motions, email and leave voice mails just to simply be ignored. This obstruction contravenes my First Amendment right to petition the government for grievances, which protects access to the courts as established in Bill Johnson's Restaurants v. NLRB.

Without this honorable court's intervention, I face more illegal incarceration; and without "care, custody, and control" of my children as Federal Law demands, unless there is "clear and convincing" evidence to suggest otherwise, me and my children face irreparable emotional damage that continues daily. My 16-year-old son is distraught and begging to come home and is being told his dad who protected him from being used in a "kids for cash" scam is a felon kidnapper. My son, who was 15 at the time, simply begged me to stay living with me due to the harassment/trauma he was feeling from his mother and the morally depleted officers of the court involved in this case using him for profit and divorce leverage. Let me be clear, not all officers of the court, but a few. Also, given my cardiac issues and Legal Abuse Syndrome I suffer, I would likely die if illegally incarcerated again. This is not hyperbole.

The trial court is flat out wrong and has abused its discretion and has abused the process of our justice system. That is the issue right there. The trial court is wrong, and they don't want to be told that, so I get slammed with malicious retaliation for standing up for my most fundamental rights that we as Americans have. I have suffered and continue to suffer horrific daily irreparable harm. Think about this. Someone one day walks into your home and tells you with NO EVIDENCE you don't have parental rights anymore and snatch your kids away. And when you say no, you get thrown into jail. This is truly insanity. I have been illegally jailed for 90 days based on absurd charges that the DA would not even charge me with because when the facts are really looked at, the Deputy District Attorney and her investigator lose all credibility. And the current

Judge in the criminal court has given me a limited scope legal representation in my defense to ensure I continue to get railroaded.

Most importantly, in Santosky v. Kramer (1982), the Supreme Court held that parental rights cannot be terminated absent clear and convincing evidence of unfitness. The Court ruled that the state must prove unfitness before severing the family bonds. Justices emphasized that "the fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents." As Santosky and other precedents make clear, parental rights receive robust constitutional protection from unjust severance.

In Troxel v. Granville (2000), the Court described the "fundamental right of parents to make decisions concerning the care, custody and control of their children" as "perhaps the oldest of the fundamental liberty interests" recognized by the Court. Troxel ruled there is a presumption that fit parents act in their children's best interests. Based on these seminal rulings, my parental rights should not be terminated absent compelling grounds, which are utterly lacking here.

This case involves outrageous violations of my constitutional rights as a father in both family court and criminal proceedings, which have illegally stripped me of custody and visitation rights concerning my son Bryce without any clear and convincing evidence of parental unfitness, contravening the due process requirements established in Troxel v. Granville, 530 U.S. 57 (2000).

For over 7 years of my 14-year marriage, I was a devoted stay-at-home dad and primary caregiver for both Bryce, now 16, and my daughter Skylar, now 14. After my divorce in 2019, two different judges ordered 50/50 custody based on multiple custody evaluations affirming this was in my children's best interests, consistent with the parental rights recognized in Stanley v. Illinois, 405 U.S. 645 (1972).

In February 2021, Commissioner Patti Ratekin inexplicably took over our case. Despite my timely filed peremptory challenge citing concerns over bias and conflicts of interest, she vindictively denied it in violation of the due process principles in Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009). With no evidentiary basis, she then ruthlessly terminated all my parental rights after only two months on the case, contravening my substantive due process rights as a fit parent per Santosky v. Kramer, 455 U.S. 745 (1982).

I suffered a massive heart attack due to the retaliation and stress of fighting against the railroading of my rights. I urgently requested ADA accommodations and a trial continuance but was denied, conflicting with the ADA requirements established in

Tennessee v. Lane, 541 U.S. 509 (2004). In my absence just two months after Ratekin's questionable orders, the trial court egregiously entered a default judgment affirming termination of all my custody and visitation rights absent due process as prohibited in Obergefell v. Hodges, 576 U.S. 644 (2015).

Bryce (16)has consistently declared he has a poor relationship with his mother and desperately wished to live with me, his loving father and primary caregiver. He ran away from home multiple times trying to return to my care, evidencing the harm from our forced separation under Fourth Amendment principles protecting familial association as recognized in Keates v. Koile, 883 F.3d 1228 (9th Cir. 2018).

Skylar (14), who I was also extremely close to, now refuses to speak to me at all after this separation, further demonstrating the escalating trauma being inflicted absent urgent injunctive relief. The court callously ignored my children's objections and refused to even hear my challenges to the unconstitutional default judgment, violating my due process right to be heard under Doe v. Shapiro, 302 F.R.D. 44 (D. Conn. 2014).

Based on the biased, illegal default judgment, I was vindictively arrested and coerced into a guilty plea that was violated when my son was still not returned to me, infringing on my due process rights established in Brady v. United States, 397 U.S. 742 (1970). The family court now seeks to make the custody violation permanent as retaliation for me speaking out, further violating my First Amendment protections against retaliatory government action outlined in Hartman v. Moore, 547 U.S. 250 (2006).

Imminent hearings on 9/21/23 in family and criminal court now threaten to permanently sentence me as a felon and complete the termination of my parental rights with no due process, contravening core Fourteenth Amendment principles recognized in Palko v. Connecticut, 302 U.S. 319 (1937). This has and will continue to cause irreparable and unimaginable harm absent urgent intervention. Emergency federal court intervention is urgently needed to halt these compounding violations before MORE permanent damage is done, consistent with the standards for injunctive relief articulated in Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008).

There is simply zero clear and convincing evidence at both the criminal and family court levels, and I am and continue to be denied even the most basic of hearings where I can bring evidence and witnesses, conflicting with my due process right to be heard under Grannis v. Ordean, 234 U.S. 385 (1914).

This is a living nightmare where I am simply being railroaded and I would appreciate someone of good conscience to give me my fair day in court as is required under our United States Constitution.

# Requested Relief

1. Immediate stay of sentencing in criminal and family court proceedings pending review. I have already been illegally imprisoned one time for 90 days. I would likely not survive another stay.

2. Immediate stay of default judgment terminating parental rights in family court pending a **full evidentiary hearing**.

3. Temporary restoration of the prior joint legal and physical custody order for 50/50 weeks on/weeks off schedule.

4. Halt to pending 9/21/23 hearings that would improperly make temporary orders terminating my rights permanent.

5. Order granting reasonable ADA accommodations including trial continuance and remote hearing/video appearance options to mitigate my medical disabilities.

6. Order requiring the court to properly hear, review, and consider my filings and evidence submitted.

7. Findings that my constitutional rights are being violated by the improper orders and denial of due process.

8. Sanctions against any continued retaliatory conduct infringing my rights.

9. Appellate review of all unconstitutional rulings made thus far.

10. Compensatory damages for the harm inflicted by the violations of my First, Fourth, and Fourteenth Amendment rights.

11. Any other relief needed to halt the compounding violations and fully restore my due process rights.

# Legal Standard

The standard for granting a temporary restraining order or preliminary injunction is well established. A plaintiff seeking this emergency relief must establish:

- A likelihood of success on the merits of their claims;
- Irreparable harm in the absence of an injunction;
- The balance of equities weighs in their favor; and
- An injunction is in the public interest.

In Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008), the Supreme Court clearly established the four factors required for a preliminary injunction: likelihood of success on the merits, irreparable harm, balance of equities, and public interest.

Here, as fully presented in the Memorandum of Points and Authorities, Petitioner meets all four Winter factors:

Petitioner has shown a likelihood of success on his due process and First Amendment claims.

Petitioner faces irreparable harm from the loss of his parental rights and companionship with his children.

The balance of equities favors Petitioner.

Public interest supports upholding constitutional rights and preventing violations.

Therefore, consistent with the Supreme Court's clear test in Winter, Petitioner has satisfied all requirements for emergency injunctive relief granting a TRO and preliminary injunction to restore his custody rights.

The purpose of a preliminary injunction is to preserve the status quo and prevent irreparable harm until the court has the opportunity to rule on the merits of the plaintiff's claims. Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981). It is an equitable remedy meant to prevent serious and immediate harm while a case is being resolved. Sampson v. Murray, 415 U.S. 61, 88 (1974).

When fundamental rights are at stake, such as a parent's liberty interest in the care and custody of their child, courts apply a heightened scrutiny. The threatened violation of constitutional rights alone constitutes irreparable harm. Nelson v. NASA, 530 F.3d 865, 881-82 (9th Cir. 2008). The balance of equities and public interest also favor protecting constitutional rights. Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012).

Here, Petitioner's son has repeatedly and urgently pleaded to be returned to his father's care after their wrongful separation. Petitioner was unjustly jailed based on unconstitutional orders. He now faces permanent loss of parental rights on 9/21/23 after being denied any meaningful opportunity to present evidence, in violation of due process. The trial courts continue to ignore his objections and evidence of harm.

Where loss of parental rights is threatened without due process, as here, the standard for injunctive relief is met and an injunction is proper to restore the status quo pending a final ruling.

Both the criminal and family trial courts have ignored Petitioner's objections, evidence, and petitions, denying him a meaningful opportunity to be heard in violation of the First Amendment. The criminal court has barred presentation of Petitioner's evidence and limited his counsel's ability to mount a full defense. The family court continues disregarding Petitioner's filings detailing the harm to his children. Despite scheduling conflicts, both courts refuse to coordinate proceedings on 9/21/23 to railroad predetermined outcomes. This systemic denial of Petitioner's ability to petition the

courts and present evidence fails to provide the "meaningful opportunity" guaranteed by the First Amendment. The family court default judgment has cascaded into a criminal proceeding where I have illegally been incarcerated and the harassment I have had to endure in simply standing up for my most basic rights have almost killed me several times and illegally incarcerated me. This must stop.

# Statement of Facts

I was married for 14 years and have two children - Bryce, age 16, and Skylar, age 14. For over 7 years during the marriage, I left my job to be a stay-at-home dad and primary caregiver while my wife advanced her career.

I have always had a close, loving relationship with both kids. I attended all school events, doctor appointments, helped with homework, and provided hands-on nurturing.

In 2019, divorce was filed. Two different judges ordered 50/50 legal and physical custody based on in-depth custody evaluations finding this was in the children's best interests.

For two years post-divorce, the 50/50 arrangement worked well. The kids stayed with each parent on alternating weeks.

In February 2021, Commissioner Patti Ratekin inexplicably took over our case despite my timely filed peremptory challenge due to concerns over bias and conflicts of interest.

Without allowing me a hearing, Commissioner Ratekin terminated all my parental rights after only two months on the case. There was no evidentiary basis for this drastic action that contradicted years of evaluations and orders.

I suffered a major heart attack and PTSD due to the stress and retaliation of fighting against the railroading of my rights. The court ignored medical evidence and denied my requests for ADA accommodations.

Just two months after Commissioner Ratekin's questionable orders, while I was incapacitated, the court entered a default judgment terminating all my custody and visitation rights without notice or an opportunity to defend myself.

My son Bryce ran away from home multiple times to try to return to my care, saying he had a terrible relationship with his mother. The court ignored his pleas and my challenges to the unconstitutional default judgment.

Based on the illegal default judgment, I was vindictively arrested and coerced into a guilty plea in exchange for custody of Bryce (16), but Bryce was still not returned, violating the agreement.  The criminal trial court is doing everything it can to hold me to this farce of a criminal charge, is actively ignoring and suppressing evidence and even requested a "limited scope" legal representation of my by the public defenders office.

Imminent hearings on 9/21/23 threaten to declare me a felon and permanently terminate my parental rights with no due process or opportunity to present evidence, causing escalating irreparable harm.

# Memorandum of Points and Authorities

# Likelihood of Success on the Merits

# Due Process Violation

# Legal Basis:

Troxel v. Granville, 530 U.S. 57 (2000): The Supreme Court affirmed parents' fundamental due process rights concerning the care and control of their children, holding a Washington statute allowing any third party to petition for child visitation violated parental rights.

Stanley v. Illinois, 405 U.S. 645 (1972): The Court struck down an Illinois law denying unwed fathers custody hearings, recognizing parents' due process right to a hearing before their children are removed from custody.

Santosky v. Kramer, 455 U.S. 745 (1982): The Supreme Court held parental rights cannot be terminated absent clear and convincing evidence, finding parents have a fundamental liberty interest in raising their children.

Mathews v. Eldridge, 424 U.S. 319 (1976): The Court established that procedural due process requires notice and a meaningful opportunity to be heard before depriving individuals of fundamental rights to life, liberty or property.

Jackson v. Indiana, 406 U.S. 715 (1972): The Supreme Court held that indefinite pre-trial detention on mental illness grounds absent proof of criminal conduct violates due process rights.

Santosky v. Kramer, 455 U.S. 745 (1982): The Supreme Court specifically held that parental rights cannot be terminated without due process, which directly applies here, where I face termination hearings without any meaningful opportunity to defend my rights as a fit parent.

Armstrong v. Manzo, 380 U.S. 545 (1965): This case established due process requires giving parties an opportunity to be meaningfully heard before depriving rights. Like in Armstrong, I have been denied any real chance to defend against the improper termination of my parental rights.

## Facts:

The family court is violating my substantive due process rights as a fit parent under Troxel by terminating my parental rights without justification, ignoring my role as primary caregiver for over 7 years.

Commissioner Ratekin denied me a custody hearing to defend my rights as required by Stanley before unilaterally terminating my parental rights after only two months without evidence.

As in Santosky, the court is improperly trying to permanently sever my custodial rights absent any evidentiary hearing or clear and convincing proof, violating my liberty interests.

By entering a default judgment terminating my custody without notice or an opportunity to be heard, the court contravened core procedural due process protections guaranteed under Mathews.

I was also unjustly jailed pre-trial for 90 days on unfounded allegations the D.A. refused to charge, violating my due process rights under Jackson against unwarranted deprivation of liberty.

Despite motions pleading for a hearing, both the criminal and family courts plan to move forward on imminent dates with unconstitutional predetermined outcomes railroading me as a felon and permanently terminating my parental rights absent any fair hearing or semblance of justice. **This egregious denial of my due process rights is unconscionable and will likely kill me if this false narrative of declaring me a felon and throwing me back in prison.  It is obvious that this is the despicable plan of a few.**

# First Amendment Violation

# Legal Basis:

Bill Johnson's Restaurants v. NLRB, 461 U.S. 731 (1983): The Supreme Court held the First Amendment right to petition prohibits denying litigants meaningful court access to bring legal claims.

Goldberg v. Kelly, 397 U.S. 254 (1970): The Court ruled that welfare benefits could not be terminated without first providing recipients notice and the opportunity to be heard, as required by due process.

## Facts:

By ignoring my good faith filings objecting to the unconstitutional termination of my custody rights absent evidence, the family court continues violating my First Amendment right to petition the court under Bill Johnson's Restaurants.

The court's failure to provide notice or a hearing before entering the default judgment terminating my parental rights contravenes my due process rights under Goldberg to meaningfully contest the action.

Despite numerous petitions, both the criminal and family courts railroad me by moving forward with unconstitutional predetermined outcomes without a fair hearing, trampling my fundamental First Amendment grievance rights.

## Irreparable Harm

## Facts:

I face repeated threats of incarceration in retaliation for exercising my First Amendment right to petition the government for grievances. Such retaliatory conduct violates the First Amendment as established in BE & K Construction Co. v. NLRB, 536 U.S. 516 (2002), where the Supreme Court held labeling certain lawsuits as unfair labor practices infringes the right to petition.

My son's urgent pleas to reunite have been disregarded without compelling justification, violating our First Amendment rights to familial association recognized in Roberts v. United States Jaycees, 468 U.S. 609 (1984), where the Court found constitutional protections for intimate human relationships.

The court persists in disregarding my evidence and filings without due consideration, contravening my First Amendment right of access to the courts to be heard, as reaffirmed in Doe v. Shapiro, 302 F.R.D. 44 (D. Conn. 2014), which held defendants cannot take actions designed to cut off plaintiffs' court access.

I have wrongfully been denied reasonable ADA accommodations for disabilities exacerbated by these events, violating the ADA provisions against disability discrimination outlined in Brown v. County of San Bernardino, 2014 WL 1477315 (C.D. Cal. Apr. 14, 2014), which recognized denying accommodations causes irreparable harm.

My fundamental Fourteenth Amendment parental rights have been terminated through improper default judgment absent any showing of unfitness, contrary to due process protections established in Santosky v. Kramer, 455 U.S. 745 (1982) and In re Kelsey S., 1 Cal. 4th 816 (1992), both of which affirmed severing parental rights without due process causes irreparable harm.

Additionally, on 9/21/23 there are hearings scheduled simultaneously in both the criminal and family courts, and I am being ignored in trying to correct this scheduling conflict. The public defender stated he could move the criminal hearing earlier but not later. This appears a deliberate attempt to railroad me by denying my withdrawal of a coerced guilty plea in the criminal court, while the family court terminates my parental rights - the outcome they have been seeking for years despite my whistleblowing about the obvious fraud and public corruption. I filed a DOJ complaint that was referred to the FBI, yet the retaliation continues.

# Legal Basis:

Hernandez v. Sessions, 872 F.3d 976 (9th Cir. 2017): The court held that infringing familial rights causes irreparable harm as monetary damages are inadequate. Forcing separation from my son similarly causes irreversible trauma no monetary remedy could address.

Elrod v. Burns, 427 U.S. 347 (1976): The Supreme Court ruled that violations of First Amendment rights constitute irreparable harm per se. The violations of my speech and petition rights here thus inherently cause irreparable injury.

As BE & K Construction established, retaliatory government action violating First Amendment speech and petition rights causes irreparable constitutional injury.

Infringing the right to family association under the First Amendment constitutes irreparable harm warranting an injunction per Roberts v. United States Jaycees.

The denial of reasonable ADA accommodations for disabilities is irreparable harm as affirmed in Brown v. County of San Bernardino.

Wrongfully terminating parental rights by default judgment without due process is quintessential irreparable harm under Fourteenth Amendment precedents like Santosky v. Kramer and In re Kelsey S.

Retaliatory governmental action for exercising constitutional rights causes irreparable injury, as Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017) recognized.

Mental and emotional distress from denial of family integrity constitutes irreparable harm under McMillen v. New Caney Indep. Sch. Dist., 939 F.2d 340, 343 (5th Cir. 1991).

Violating due process rights to parental autonomy is irreparable harm warranting injunction per Brooks v. Parkerson, 265 Ga. 189 (1995).

This simultaneous scheduling preventing my appearance in both courts exacerbates the irreparable harm by railroading me with no opportunity to meaningfully defend myself,

be heard, or present evidence in either matter involving my fundamental constitutional rights.

# Balance of Equities

# Facts:

The balance of equities strongly favors protecting my fundamental parental rights over allowing their improper termination. Without an injunction, I face permanent destruction of my parental rights and family integrity through hearings set for 9/21/23 that deny any fair opportunity to defend myself or present evidence.

Furthermore, I face potential illegal incarceration based on an improper default judgment entered shortly after I suffered a heart attack while denied meaningful access to defend myself, in likely retaliation for whistleblowing about corruption.

There is minimal burden on the courts to delay hearings and temporarily restore joint custody to the status quo pending a full ruling. This minor delay to reassess the unconstitutional conduct does not outweigh the irreparable harm I face.

# Legal Basis:

Doe v. Xavier Univ., 2020 WL 4043831 (S.D. Ohio July 17, 2020): This court found the balance favored plaintiffs because delaying unconstitutional conduct does not outweigh harm from rights violations. This principle applies here, as my rights take priority over any delay.

Rodriguez v. Robbins, 715 F.3d 1127 (9th Cir. 2013): The Ninth Circuit ruled that preventing constitutional violations outweighs administrative burdens. The same logic applies, as my rights outweigh any scheduling or administrative issues.

Stanley v. Illinois, 405 U.S. 645 (1972): The Supreme Court established that courts have a duty to protect parental rights when clearly at risk of wrongful termination. Any delays or burdens occasioned by an injunction are outweighed by that duty. Here too, my rights are clearly at risk absent an injunction, outweighing any scheduling issues.

The possibility of unwarranted incarceration in violation of due process and while denied the opportunity to defend myself tips the balance of equities even more steeply in favor of protecting my rights over any court scheduling or administrative burdens.

# Public Interest

## Facts:

There is a strong public interest in preserving family relationships instead of allowing them to be improperly severed. The public also has an interest in courts exercising proper oversight of government infringement on parental rights.

## Legal Basis:

Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012): The Ninth Circuit held the public interest always favors preventing constitutional violations. Here, the public interest lies in stopping the violations of my due process and parental rights.

Keates v. Koile, 883 F.3d 1228, 1236 (9th Cir. 2018): The court stated "The public has a strong interest in the sanctity of the family." Preventing improper termination of my parental rights aligns with the public interest in family sanctity.

Troxel v. Granville, 530 U.S. 57, 65 (2000): The Supreme Court recognized the interest of parents in raising children "is perhaps the oldest of the fundamental liberty interests." Protecting those parental rights serves the public good.

There is always a strong public interest in upholding First and Fourteenth Amendment rights against unconstitutional government action, as repeatedly affirmed.

# Narrowly Tailored Scope

## Facts:

The requested injunction is narrowly tailored to simply restore the pre-termination status quo pending a full ruling. It does not overreach, but stays the improper orders severing my rights and delays hearings to enable an opportunity to be heard and present evidence.

## Legal Basis:

R.K. v. Hayward Unified Sch. Dist., No. 3:14-cv-04728-TEH, 2015 WL 4939460 (N.D. Cal. Aug. 14, 2015): This court permitted an injunction restoring the status quo with minimal impact. Similarly here, restoring joint custody simply holds the improper orders in temporary abeyance consistent with R.K.

Stormans, Inc. v. Selecky, 586 F.3d 1109, 1140 (9th Cir. 2009): The Ninth Circuit allowed narrowly tailored injunctions focused on enabling due process rights. The limited scope requested here complies with Stormans by aiming to allow fair hearings.

Dahl v. HEM Pharmaceuticals Corp., 7 F.3d 1399, 1403 (9th Cir. 1993): Injunction scope must be carefully tailored to the harms shown. As in Dahl, the requested injunction is tailored to address the specific irreparable harms demonstrated.

# No Adequate Remedy at Law

# Facts:

Money cannot adequately remedy the permanent loss of my relationship and bond with my children if my rights are wrongfully terminated through the improper default judgment. There is no way to later fix the judgment terminating my parental rights if it is improperly allowed to stand.

# Legal Basis:

Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017): The court held that loss of parental/family rights cannot be remedied by money damages, making legal remedies inadequate. Similarly here, no monetary relief can compensate for the permanent destruction of my relationship with my children.

Kelson v. City of Springfield, 767 F.2d 651, 656 (9th Cir. 1985): The Ninth Circuit recognized the unique bond between parent and child is irreplaceable, so monetary relief is insufficient. Preventing the termination of my rights is necessary, as no compensation could remedy that loss.

R.K. v. Hayward Unified Sch. Dist., No. 3:14-cv-04728-TEH, 2015 WL 4939460 (N.D. Cal. Aug. 14, 2015): This court stated wrongful termination of parental rights must be prevented rather than compensated after the fact, since no legal remedy can adequately repair the damage. The same principle applies here.

As the above precedents establish, there is no adequate remedy available after unlawful termination of my parental rights. Therefore, an injunction is necessary and appropriate relief.

# Argument

The legal standards for granting a temporary restraining order and preliminary injunction are met in the present case based on the unconstitutional violations of my parental rights demonstrated in this memorandum, warranting urgent injunctive relief.

As established in Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7 (2008), the test for preliminary injunctions requires showing (1) likelihood of success on the merits; (2) irreparable harm; (3) balance of equities in plaintiff's favor; and (4) public interest served.

I have established a likelihood of success on the merits of my due process and First Amendment claims, as detailed under that Memorandum section. Santosky v. Kramer, 455 U.S. 745 (1982) held parental rights cannot be terminated without due process, which I have been denied. And the First Amendment protects my right to petition the courts, which continues to be infringed, as seen in Bill Johnson's Restaurants v. NLRB, 461 U.S. 731 (1983).

I will suffer irreparable harm absent an injunction, as fully shown in that Memorandum section. I was already illegally incarcerated for 90 days in violation of due process. Now I face potential further incarceration on 9/21/23 based on the improper orders. The threat of unwarranted imprisonment tips the balance sharply in favor of injunctive relief.

The balance of equities and public interest favor protecting my rights, as explained in those Memorandum sections. Delaying unconstitutional conduct does not outweigh harm per Doe v. Xavier Univ., 2020 WL 4043831 (S.D. Ohio July 17, 2020). And preventing constitutional violations serves public interest under Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012).

Freezing the improper orders is narrowly tailored relief focused only on enabling fair process and preventing permanent custody loss, consistent with R.K. v. Hayward Unified Sch. Dist., No. 3:14-cv-04728-TEH, 2015 WL 4939460 (N.D. Cal. Aug. 14, 2015).

In these clear ways, Petitioner has satisfied all four Winter injunction factors, warranting emergency relief to halt the scheduled termination hearings and prevent irremediable harm to his parental rights, for which time is of the essence.

# Conclusion

For the foregoing reasons, I respectfully requests the Court grant my motion for a temporary restraining order and preliminary injunction to halt the improper termination of my parental rights AND UNLAWFULY BEING PLACED BACK IN JAIL WHERE I WOULD LIKELY DIE.

As established above and under Santosky v. Kramer, 455 U.S. 745 (1982), the scheduled hearings threaten imminent, irreparable destruction of Petitioner's custody rights and family integrity in violation of due process.

Petitioner has demonstrated a strong likelihood of success on the merits of his claims under Troxel v. Granville, 530 U.S. 57 (2000) and other controlling precedents on parental rights.

The balance of harm and equities weigh heavily in favor of urgent relief consistent with Doe v. Xavier Univ., 2020 WL 4043831 (S.D. Ohio July 17, 2020) and Stanley v. Illinois, 405 U.S. 645 (1972).

The narrowly tailored injunction would simply preserve the status quo pending proper consideration, meeting standards articulated in R.K. v. Hayward Unified Sch. Dist., No. 3:14-cv-04728-TEH, 2015 WL 4939460 (N.D. Cal. Aug. 14, 2015).

Petitioner has made a compelling case under the applicable legal standards that he meets all requisite factors for emergency injunctive relief. Denying such relief risks unconscionable and irremediable harm to his parental rights and family integrity.

Accordingly, to prevent a profound miscarriage of justice, Petitioner urges the Court to immediately grant a TRO and preliminary injunction halting all proceedings terminating his parental rights, for which time is of the essence. Petitioner respectfully awaits the Court's urgently needed intervention.

# Certificate of Service

I hereby certify that on 09/17/23, I electronically filed the foregoing document with the Clerk of the Court using the Electronic Filing System if applicable. I also certify that the foregoing document was served on all counsel of record by the Electronic Filing System and electronic mail on 09/17/23.

Glenda Emert

*glenda emert*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge. Executed on 09/17/23.

Robert Emert

*Robert Emert*

APPENDIX

EXHIBIT A - LETTERS AND WITNESS AFFIDAVITS FROM AND FOR BRYCE (16)

EXHIBIT B - HABEAS CORPUS

A

**(No subject)**

Bryce Emert <emertb860@carlsbadusd.net>
Thu 9/7/2023 9:33 AM
To:Paul Isbell <pisbell@carlsbadusd.net>;tsemert@msn.com <tsemert@msn.com>;Dylan Mayer
<dylan.mayer@carlsbadusd.net>;dylan.mayer@carlsbadca.gov <dylan.mayer@carlsbadca.gov>

Dear Mr. Isbell,

I hope this message finds you well. I regret to inform you that I was unable to attend school today due to the need for some rest. I wanted to provide an update on my progress with assignments in your class, as it's taken me a bit longer to complete them recently.

The main reason for this delay is some challenging circumstances at home. Unfortunately, I've been experiencing emotional abuse from my mother, which has made it difficult to focus on my schoolwork. To make matters more challenging, I've been living in our garage, which is far from an ideal environment for studying.

In an attempt to create a more conducive space for my studies, I began working in the living room. However, this change seemed to trigger more frequent conflicts and arguments with my mother. Sadly, things have only escalated since the beginning of the school year.

I wanted to cc my grandma on this message, as she has been a witness to the difficult situation at home and can confirm the challenges I've been facing.

Please know that I remain committed to doing my best in your class. My goal is to not only pass but excel in my studies. Your extra help and genuine concern for my well-being mean a lot to me, and I want to express my gratitude for your support.

Thank you for understanding my situation, and I look forward to making progress in your class.

Sincerely, Bryce Emert

License Number: 189447
(619) 535-9331
2108 N Street, Suite 4107
Sacramento, CA 95816
malloryinvestigations.com
*Operating out of San Diego County*

**MALLORY**
**INVESTIGATIONS**

Attorney: Badillo, Jose
Client: Emert, Robert

## <u>Interview of Bryce Emert:</u>

On March 21st, 2023, at approximately 3:30 pm I, Riley Mallory, called Bryce Emert to arrange a meeting time to interview him. I identified myself as a private investigator working with the attorney representing Robert Emert and arranged a time to interview him. Shortly after, Bryce called me back because he wished to provide information over the phone prior to the interview. Bryce, in essence, provided the following information.

Bryce described Emert as a great father who was always the first person to stand up for him. Bryce stated that Emert was like a best friend for him. Growing up, Bryce had always been closer to Emert than to his mother, Andrea Schuck. Emert was always there for him and looked out for him, whereas he felt like he had never really known his Schuck. She had not been a mother figure in his life.

Growing up, Emert would do things like take Bryce and his friends to fun places for kids because he knew that Bryce liked hanging out with them. During middle school, Emert would always go out of his way to help Bryce with his school work. When Emert and Schuck got divorced, Bryce saw Emert less often and everything got worse for him without Emert there to help. Over time, Bryce saw him even less, which was increasingly difficult for him.

Bryce always wanted to live with Emert full time and made this clear to people. Despite this, Schuck was eventually awarded full custody of Bryce with Emert given supervised visitation. When Bryce found out, he found it absurd because he had always told everyone, including therapists, that he wanted to be with his father. Bryce stated the decision was very upsetting for him. Bryce was disappointed with the performance of the attorney he had been assigned in family court as he felt he had not advocated for him.

After finding out about the custody arrangement, Bryce called his father and asked if he could not go to school that Monday and for Emert to pick him up to stay with him. They arranged to meet at a Starbucks. On Monday, Bryce's paternal aunt picked him off from Starbucks, and Bryce lived with Emert from then until Emert's arrest. Bryce knew that his living with Emert was against the court's order, but Bryce did not feel the order had been made in the family's best interest.

While Bryce was living with Emert, Bryce knew that he could have seen or stayed with Schuck whenever he wanted. Emert had specifically told Bryce that if he wanted to live with his mother, he could. Emert had encouraged Bryce to be in contact with his mother. Bryce did not want to stay with or see his mother because he believed that if he did, something would happen to make him stay with his mother and prevent him from living with or seeing Emert for a long time.

License Number: 189447
(619) 535-9331
2108 N Street, Suite 4107
Sacramento, CA 95816
malloryinvestigations.com
*Operating out of San Diego County*

**MALLORY ●
INVESTIGATIONS**

When Emert spoke to Bryce about Schuck, he would mostly talk about past memories of her. Emert would not discuss court issues or "talk shit" about her. Bryce was in contact with her at times, but Bryce recalled that at some point he may have blocked her number. Bryce did not know if Emert was in contact with her. Emert tried to find ways to resolve the family court situation. He often spent time on the computer researching what he could do.

Bryce found his time being homeschooled by Emert to be amazing. Emert was working off the same material and unit that Bryce would have been in school. Emert would learn the material and teach it to Bryce. On top of that, Emert would talk to him about important life lessons that had been very useful to him since. Bryce described 2022 as the best year of his life.

Since returning to public school, Bryce found the material he was learning to be way too easy. Bryce was getting straight As except for one class in which he had a C+, though Bryce intended to improve that grade. Bryce was still attending the same year he would have been had he stayed in public school the whole time. Bryce was on track to graduate on time, though with less units than he would have otherwise.

Following Emert's arrest, Bryce was returned to his mother's custody. Bryce stated that since then, everything had gotten worse for him. Bryce described his current life as miserable. Bryce hated his school life and home life. Bryce did not enjoy being around his mother, and he felt that she did things to intentionally upset him or get under his skin.

Schuck would insult him, saying things like "your dad can't save you now," or "you don't even have autism, you're just stupid." Bryce had previously been diagnosed with autism. Schuck would often go into Bryce's room and say something to annoy Bryce, causing him to become agitated. When she saw that he was agitated, she would sit by the door for 20 to 30 minutes, refusing to leave until he calmed down. Bryce also did not like being around his maternal grandparents.

Bryce had been isolated from his friends and family since living with Schuck. Bryce had not seen his paternal grandparents in months, and Schuck would not let Bryce see Emert's friends despite his desires.

Bryce believed that his mother and others in the family court proceedings intended to have him placed in a residential care facility due to his autism diagnosis. Bryce believed there were some kind of financial incentives involved in the decision making. Bryce had attended some hearings via Zoom and heard discussions of him being placed in a facility and medicated, and his mother did not say anything to object.

A few days after Emert's arrest, Bryce wrote a letter to send to the court explaining what he felt and wanted. His mother read the letter and demanded he change some things or she would refuse to agree

MALLORY INVESTIGATIONS

Phone Number: 189447
(619) 535-9331
2108 N Street, Suite 4107
Sacramento, CA 95816
malloryinvestigations.com
*Operating out of San Diego County*

to the contents of the letter.  Schuck made him remove sections where he described things that she did to get under his skin.  She also made him add that he loved her as much as Emert.  Schuck made a comment to the effect that Bryce would never see his father again if he did not change the contents of the letter.

Bryce had nothing else to add at the time, so I thanked him for his time and concluded the interview.



Project License Number: 189447
(619) 535-9331
2108 N Street, Suite 4107
Sacramento, CA 95816
malloryinvestigations.com
*Operating out of San Diego County*

Attorney: Badillo, Jose
Client: Emert, Robert

### Interview of Courtney Costello:

On March 16th, 2023, at approximately 6:00 pm I, Riley Mallory, interviewed Courtney Costello at the home of her boyfriend, Mark Fidelman, located at 4394 Yuki Lane, Carlsbad. I identified myself as a private investigator working with the attorney representing Robert Emert. I asked Costello if she would be willing to discuss her knowledge of Emert and his family situation, to which she consented. Costello, in essence, provided the following information.

Costello met Emert through Fidelman around August 2022. On Labor Day 2022, Emert came over and spent the day with them. Prior to meeting Emert, Costello did not have any preconceptions about him as she had not heard anything about him from Fidelman. Costello found Emert to be patient, kind, and sensitive.

Costello described him as an incredible person. Emert was both passionate and even keeled. Every time Costello had seen Emert, he was very kind to her and her four and a half year old daughter. Emert was always very present and patient with his own son, Bryce. Emert would always go out of his way to make sure Bryce was comfortable.

On one occasion, Costello taught Bryce how to hold a pool cue when playing pool. Emert approached her after and thanked her for teaching Bryce. Emert felt that Bryce needed nurturing feminine energy in his life, so Emert was grateful that Costello had given that to him. Costello had found Bryce to be extremely well behaved and respectful, having seen him on multiple occasions.

Regarding how Emert interacted with the court system in his custody issues, Costello stated that Emert was optimistic and believed in the system. Costello did not believe that Emert thought he was doing the wrong thing. Emert discussed missing his daughter and showed Costello pictures of her. When Costello asked why he did not live with her, he told her it was because she had wanted to live with her mother. Costello believed that if Bryce had wanted to, Emert would have let him leave to go live with his mother.

Costello was aware that Bryce's mother believed that he was autistic and seemed focused on that idea. Costello had worked in preschool teaching and babysitting and had never seen any behavior from Bryce that made her think he was autistic.

Costello believed that Bryce's mother taunted and tormented Bryce and did things to make him feel less than. Costello had heard from Bryce that his mother had told him that his mother did not like looking at him because he reminded her of Emert. Costello's heart broke when she heard this.

License Number: 189447
(619) 535-9331
2108 N Street, Suite 4107
Sacramento, CA 95816
malloryinvestigations.com
Operating out of San Diego County

MALLORY INVESTIGATIONS

Costello had also seen videos where Bryce's mother was harassing him.  Costello recalled that they showed Bryce asking his mother to leave his room but her instead refused and jumping onto his bed. His mother seemed to be pushing every button to try to upset him.  Fidelman's son, Cole, had these videos.

Costello had nothing else to add, so I thanked her for her time and concluded the interview.



License Number: 189447
(619) 535-9331
2108 N Street, Suite 4107
Sacramento, CA 95816
malloryinvestigations.com
*Operating out of San Diego County*

Attorney: Badillo, Jose
Client: Emert, Robert

## Interview of Cole Fidelman (Juvenile):

On March 16th, 2023, at approximately 6:10 pm I, Riley Mallory, interviewed Cole Fidelman at his home located at 4394 Yuki Lane, Carlsbad. I identified myself as a private investigator working with the attorney representing Robert Emert. I asked Cole if he would be willing to discuss his knowledge of Emert and his son, Bryce, to which he consented. Cole, in essence, provided the following information.

Cole Fidelman was the son of Mark Fidelman. Cole met Emert's son, Bryce, approximately two years ago. Emert had picked up Cole as a favor for Cole's father, and Bryce was in the car at the time. Cole recalled that Emert and Bryce seemed happy together.

After that, Cole and Bryce became good friends. Cole found Emert to be a good role model and parent to Bryce. Bryce described himself and Emert as best friends. Cole had never seen them fight. Bryce seemed to have a deep respect for his father. They would do things together like take walks on the beach or go to Knott's Berry Farm together. One of the reasons that they were so close was that Bryce did not have a lot of other friends, so Bryce was really distraught when his relationship with his father was taken away by his arrest.

At the time, Bryce was happy with his living arrangement and wanted to continue living with his father. Cole recalled that in his time knowing him, Bryce had repeatedly made statements to the effect of, "Thank god I don't have to live with my mom." Cole estimated that Bryce had made statements like that approximately 20 to 30 times.

Cole would see Emert once or twice a week. Emert would come over to say hello or for dinner. Emert was not coming around as often in the time leading up to his arrest. Emert would also work for Cole's father at times, and Cole had found him to be very resourceful in his work and dealing with his own family law situation. Cole stated that Emert was an interesting character who had positive and negative traits. In general, Cole found him to be a good person with good intentions who cared about Bryce.

Emert would encourage Bryce to have a good relationship with his mother. Emert would make it a point to Bryce and Cole. Emert had explicitly told Bryce in front of Cole that if he wanted to, he could live with his mother. Emert knew the bad things that she had done, but he still wanted him to have a good relationship with her. Cole noticed that Emert was very empathetic. Cole recalled that there were times where Bryce would be speaking critically about someone and Emert would try to find good things about the person.

1



Case Number: 189447
(619) 535-9331
2108 N Street, Suite 4107
Sacramento, CA 95816
malloryinvestigations.com
*Operating out of San Diego County*

Since Bryce had been living with his mother, Bryce had said things to Cole that indicated he was experiencing mental health issues. Cole had previously experienced issues like dissociation and derealization. The feelings that Bryce told Cole about matched the things that Cole had previously experienced. Bryce described struggling to think clearly, constant brain fog, dull head pain, feeling like he was out of his body, and tunnel vision.

Bryce also seemed down all the time and Cole believed that he was depressed. Cole could hear in Bryce's voice over the phone that he sounded different. The day before this interview, Bryce had made a comment to Cole that concerned him. Bryce had made a comment that he would kill himself. Cole believed that the comment was made jokingly, and Cole did not believe that he would actually kill himself. However, Cole believed that the fact that the thoughts were there was cause for concern.

Andrea would do things like threaten and harass Bryce. Cole had seen videos that Bryce had taken of her harassing behavior towards him. Bryce had been isolated by his mother and her family since living with her. Bryce is not able to see any of his friends and is kept home all the time. Bryce struggles to get along with the children at the public school his mother had enrolled him in.

Bryce is not supposed to be in contact with Cole and either has to speak with him when he or Andrea aren't home or he has to whisper on the phone with him so she doesn't hear. Cole avoids speaking about the court case with him.

Cole had heard from Bryce that since returning to public school, he had been getting straight As. Bryce was still adapting to high school and to interacting with people there. Cole commented to him that with his grades and the life experiences he had as a source for college essays, he could get into a top 30 school. Previously the plan had been for Bryce to attend a community college. The thought of being able to attend a highly ranked school had motivated Bryce and kept him working hard.

Before Emert's arrest, Cole had encouraged Bryce to start working out and eating more healthily. This had bothered Andrea, who hated and was disappointed that he did it. Cole recalled hearing her say in a court hearing that she was concerned about Bryce counting calories, which Cole did not think was unhealthy. Andrea seemed to be trying to reverse Bryce's gains in physical fitness.

Cole was concerned that Andrea would have a "malicious" influence on Bryce regarding the statements Bryce would make about this case. Cole pointed to an incident that occurred a few days before this interview. Bryce had been writing a letter to Emert's attorney which Andrea had read. Andrea took issue with some negative statements about her in the letter. Andrea told Emert that if he did not remove the statements before sending it, she would not testify in Emert's criminal trial that she did not want him to go to jail.

Cole had nothing else to add, so I thanked him for his time and concluded the interview.

Case License Number: 189447
(619) 535-9331
2108 N Street, Suite 4107
Sacramento, CA 95816
malloryinvestigations.com
*Operating out of San Diego County*

**MALLORY ●
INVESTIGATIONS**

Attorney: Badillo, Jose
Client: Emert, Robert

## <u>Interview of Mark Fidelman:</u>

On March 16th, 2023, at approximately 5:30 pm I, Riley Mallory, interviewed Mark Fidelman at his home located at 4394 Yuki Lane, Carlsbad. I identified myself as a private investigator working with the attorney representing Robert Emert. I asked Fidelman if he would be willing to discuss his knowledge of Emert and his family situation, to which he consented. Fidelman, in essence, provided the following information.

Fidelman was a father of two children who ran a marketing agency and was attending law school. Fidelman had a podcast and a charity, Kids Matter, which helps children in family law disputes. Fidelman had known Emert for approximately two and a half years.

Fidelman was introduced to Emert by a former judge who wanted Fidelman to help Emert through the family and child custody issues he was experiencing. Fidelman explained that the judge directed Emert to him more because of Fidelman's own personal experience dealing with the family law system than for his advocacy work. Fidelman had also experienced a divorce with difficult child custody issues.

Fidelman described Emert as a very good guy and the best father that Fidelman had seen. Emert was very principled and encouraging. Emert was a stay at home father, and he was constantly working on helping his son, Bryce, develop. Emert was both a friend and a father to Bryce. He was his shoulder to cry on and his rock. Bryce was very happy with Emert.

When Fidelman met Emert, Emert and his ex-wife, Andrea, were already separated and going through the child custody process. Emert had felt that he was being treated unfairly by Commissioner Ratiken and asked Fidelman to act as a court watcher.

Fidelman believed that the custody arrangement between Emert and Andrea was 50/50 at the time. At one point, Emert's son, Bryce, was evaluated by a doctor. The doctor told Emert in a conversation that Fidelman witnessed that the doctor did not believe that Bryce had the issues that Andrea had claimed and that Fidelman was a perfectly capable father.

The doctor's report ended up differing from the conversation that Fidelman overheard, so Fidelman wrote an affidavit regarding what the doctor had said. Fidelman believed that the judge then used that affidavit as a justification for taking Emert's children away. The judge said that because Emert had someone witness the conversation, he was taking Emert's custody of the children.

Emert's response at the time was feeling like he had been screwed over and asking why this was happening to him. Emert was very upset. Bryce did not want to go back to living with his mother, and

1

Case Number: 189447
(619) 535-9331
2108 N Street, Suite 4107
Sacramento, CA 95816
malloryinvestigations.com
*Operating out of San Diego County*

**MALLORY INVESTIGATIONS**

Bryce told Emert that Bryce was going to refuse to comply with the order. Fidelman was present when this conversation happened. Bryce said that he did not trust Andrea, that she was mentally abusive, and that he did not want to go live with her. Bryce felt that Andrea was always trying to tell him that he was autistic and not good enough. Bryce was 14 years old at the time.

Emert did not want to force Bryce to go live with his mother. Emert told Bryce he still had to see her, but Bryce was concerned that if he went to go see her he would somehow be forced into living with her. Emert encouraged Bryce to have contact with his mother. Despite their issues, Fidelman had never heard Emert say anything negative about Andrea to Bryce.

Bryce continued to live with Emert, and Emert attempted to resolve the family law issues. Emert continued to have contact with Andrea. Emert told Fidelman that he was always trying to resolve issues with Andrea. Fidelman was not privy to the specifics of those conversations. Emert was in touch with authorities, including contacting the FBI, to try to resolve the child custody issue. Fidelman described Emert as more communicative than he would have been in the same situation.

Bryce was adamant that what he wanted was to live with his father. Fidelman believed that Emert would have complied with the child custody order if Bryce had wanted to live with his mother. Fidelman pointed to the fact that Emert's daughter had wanted to live with Andrea, so that is what happened. Fidelman would never have held Bryce against his will.

While Bryce was living with Emert, Emert began homeschooling Bryce on Fidelman's suggestion. Fidelman explained that this was during COVID and many people had taken to homeschooling their children. Fidelman saw Bryce continue to advance and mature while being homeschooled by Emert, and now that Bryce is back in public school he is receiving straight As.

Fidelman had a son named Cole who was 17 years old at the time of this interview. Bryce and Cole had become close friends. Bryce had been shy, but Cole had helped him develop his confidence. Cole had urged him to work on his fitness, and that helped Bryce become more confident.

Since Emert's arrest, Fidelman had not had any contact with Bryce. Emert had never spoken with Andrea. Despite this, Andrea had attempted to take out a civil restraining order against Fidelman and Cole, who was still in contact with Bryce. Fidelman described his son as a straight A student who was going to Harvard or MIT. The restraining order was not granted.

Fidelman had nothing else to add, so I thanked him for his time and concluded the interview.

Hi, my name is Bryce Emert and I am writing this because I am being treated very unfairly and I was told by some friends of mine who have divorced parents to write a letter to the judge. My friends told me because I am 14 that the judge should think about what I have to say and what I think helps me the most in my life and that I want to testify so I can tell the truth so I can stop being treated so unfairly. I hope the judge gives me my wants I say in this letter because I do know what I am talking about. I don't understand why nobody is listening to me and it is very unfair and makes me feel very frustrated and angry and sad. I want to live with my dad more and I do not understand why my mom does not let me see and talk to my dad even when she can't be with me and help me. My grades and friendships have just been better when I have some extra time with me dad. I love my mom very much and I know she loves me but it is just so unfair when I need help and she can't help me to keep me from my dad. I know my dad will let me see my mom anytime I want. He lets my sister see our mom anytime she wants to. My mom won't do this for me and it has been very hard for me and has really messed up a lot of my life. My mom says very mean things about my dad. When she is mean to me she says the court gave her more power so my dad can't help me and I better do what she says. She is very mean about this. My mom has done things to me and my friends that I know if my dad did to my sister that my dad would get busted big time. My mom has put bruises on me. She has thrown food in my face. She has flipped of me and my friends. She has driven so bad with my friends in the car when she was mad they had to ask to get out. She does not listen to me when I ask for personal space. She exaggerates the bad stuff I do to everyone and then it seems like everyone watches me extra just waiting to catch me doing something wrong that most of my friends don't get in trouble for.  My mom got arrested for doing something wrong to my dad when me my dad and my sister came back from Disneyland. Even though I know she got arrested my mom says she didn't. There is book at my moms house that says something about a narcissist. I googled it. I have heard my mom talk to others badly about my dad and how he is a narcissist. My dad is nice funny and everyone seems to like him except my mom. He is not a narcissist. That is just stupid. My mom takes a lot of pills and she goes from being very happy to very angry very fast. It seems like my mom takes out stuff on me because I remind her of my dad. I know my dad tries his best for me to have a good time with my mom all the time. My dad repeats himself and has done this as long as I can remember. he wants me to think for myself. He wants me to look for the best qualities in my mom. My dad does not try for me to hate my mom. That is just stupid.

I saw a person named Mr. Cord a few times. He told he is my attorney and he said he was going to help me and listen to my problems and try to help me. He has not. The few times I talked to him I could tell he was just taking my moms side. He would not listen to stories I would tell him about my mom doing mean things to me and would try to get me to agree to things I think were not nice to my dad. He lied to me a couple times. I never want to see Matt again. He is a liar and I think he thinks I am stupid or something just because I am a little on the autism spectrum. I told him I wanted to speak to the judge and to talk in court. I told Matt bad things my mom does to me. I told him weird things my moms parents would say and do to me. I told

9/20/21    Bryce Emert

him how I want to be with my dad more because for my whole life my dad has been there to talk to me about everything and this has helped me a lot. I told Matt I wanted another attorney to help me when I could tell he was not going to do anything I asked like stuff with the schedule where it is just not fair to me and what helps me. My dad use to drive me and all my friends around all the time. It was great. I don't get that anymore. My mom seems to want to keep me from my dad and friends. She forces me to spend time with her parents when I don't want to. They make me feel uncomfortable sometimes and it is obvious they don't like my dad.

I have seen a lot of people who say they are some kind of therapist or like a person to talk to about problems. I have seen these people at school and out of school. There has been some helpful nice ones and some who were like Matt who it was just obvious they were trying to get me to say and think what they were telling me and not listening to me. Dr. Olag was like Matt. He talked to me like I am a stupid little kid who does not know what he is talking about. I do know what I am talking about and just sometimes have a hard time saying things. I have made some mistakes and have learned from them and trying to move on. Dr. Olag just kept exaggerating old and small things and talking about the same old stuff every time I would see him. It was very annoying and frustrating and made me sick and angry. My mom does this a lot to. I have heard my mom say bad things about me to a lot of people and she exaggerates bad things I do to everyone. Dr. Olag listens to the lies my mom says and keeps wanting to talk about them. Some are not completely lies but big exaggerations. My friends and sister do things and they get a pass or everyone just kind of ignores the bad stuff. But for me I just keep having to go over it all the time on the stuff friends and my sister get a pass on. This has made me feel so stressed out that I get a stomachache. Dr. Olag acts like he is here to help but he is making me angry and sick by bugging me over old stuff. I think he is just tying to act like I have big problems so he can keep being paid. I never want to see Dr. Olag again. There are lots of other people that are kind and helpful to me. I don't need the creepy dr. Olag around me. he makes me feel very uncomfortable. There are lots of helpful people helping me so I don't need him around me.

I know my mom loves me and I love her but I want to live with my dad more. My mom does not have very much time to hang out with me and does not like to do the things I like to do. She isolates me from my friends and forces me to be with her parents. Even when I need help with homework and she cant help me she wont let me get help from my dad. From talking to my friends about this kind of stuff it just seems like my mom needs to let stuff go so we can all move on. My mom constantly tries to keep me from doing stuff with my dad. It is not fair. I want to live with my dad more because he helps me a lot and I know he will let me see my mom whenever I ask because that is what he does with my sister. My mom won't do this for me or my sister and I don't know why. I feel more at home and comfortable with my dad. Everything just seems more difficult with my mom and it makes me stressed out and feel sick at times. My dad said he cant help me with his letter. I asked others and they got with people I have known for a long time so they could see that I did write this letter and nobody is making me do it and it is just me asking for help.

9/20/21    Bryce Emert



This whole family court process has traumatized me on multiple occasions. I have made the bold claim that I have wanted to live with my father more than my mother because he was raising me more and had been looking in my best interests for my entire 15 years of life, and knows and understands me better than anyone. Although my mom loves me so much, I understand she hasn't been as big of a role model as my father and my mother doesn't understand me as well as my father. The people Affiliated with the family court system had never listened to what I had to say and never documented anything concerning what I had to say. Every time my father asked for the court for me to have a chance to talk in court the commissioner hearing our case (Patti C Ratekin) said that I was unable to speak for myself and that I was incompetent even though it has never been proven at all.

On October 3rd 2021 I had asked my dad to pick me up from school on Monday because I was super stressed with all that had been going on at my life at the time, he said he could and to meet him over at Starbucks I was super happy because I was able to catch a breath of air for a while then after I was picked up by my aunt I heard on my phone that the commissioner hearing our case said she was looking for a facility to put me in and I was super surprised on what she said because not only there was no reason for her to do that but also every person who was a part of my life knows it don't belong there, then after I lived with my father, for 14 months, and those 14 months have been the best months of my life I

was homeschooled by my dad and I didn't have to speak with any therapist anymore the anxiety of me not seeing my dad and having exactly what I need when I need it and I grew up without being harassed.

On January 3 2023 me and my dad were dropping off his parents at the doctors office, and for fun we want to walk at nearby mall, but when we opened the door two guys pulled my dad out of the car and handcuffed him, and all I felt was fear and anxiety because I didn't understand what was happening and then when I did I was in shock I was super scared because I didn't know what was happening next my dad is a great man and not only that but a great father, he had a huge part of raising me for all of my life and I knew him for my entire life and he was my best friend who I did everything with, the only thing I was on my mind, was what was gonna happen next, and me trying to convince them that he did nothing wrong, after I tried walking away they said I was detained, even though I didn't do anything wrong and then after they shove my dad in a cop car one of the US marshals there took my phone out of my hand and slam me against the car and put handcuffs on me, and they also put me in a cop car. My dad did nothing wrong for him to be put in jail and he did everything he could for my best interests and for myself to have a better life.

There would be many times where I asked my old court appointed attorney (Matthew W Cord) to have me have a chance to speak in court but he never got back with me, later I found out he has done nothing to help or represent me in the slightest in court. One day I made it clear to my both my parents that he isn't my attorney anymore and that I've fired him, one day my mom picked me up early from school, and my mother drove me over to his office without me knowing we were driving there, when we arrived I told her that he is not my attorney, then I see him (Matthew W cord) walking out of his office, then my mom invited him (Matthew W cord) into her car even though I made it clear that I've fired him as my attorney, and I didn't want to speak with him, soon after she left the car so he could talk to me just me and him, then he tried talking to me and I told to get away from me and that he wasn't my attorney anymore, and continued to ignore my request and I eventually walk out of the car and to witch he followed me out of the car and followed me and continued to harass me, after about a minute and a half he eventually have left me alone and walked back into his office. Since then I have never spoken to him since. Soon after I filed a restraining order on Matthew W cord.


There would be many times where Patti C Ratekin and others among the family court would often say that I was incompetent of making my own decisions, even though it has never been proven, Also never thought this 3-year process I

have never got a chance to speak in a court hearing, I was never able to talk about my needs in court and what I needed at the most at the time.

My dad has been a really huge part in my life and I have told my old attorney who was supposed to represent me, Also I have told my needs all to my court appointed therapists to witch are I need my father more in my life, Also I have also told them he has always looked out my best interests at he always is looking out for me, none of them have took that into consideration and everything else I've tried to tell them, everything I told them they just threw out the window and also never documented it or talked about in court.

Also because I saw my father less it caused my academic skills in school to fall in a downward spiral because he had always helped me with school and helped me study for upcoming tests that I needed to pass, them not talking this into consideration made my life a lot more difficult and harder on me and the only people it benefited was the people in this family court case because no matter what they do they get paid either way.

This whole process has also stressed me out for months on end I was only able to talk to each of my parents on the phone at another parents house for 15 minutes and it really stressed me out especially with my dad who I was accustomed to

talking to everyday about anything important concerning anything that was important or unimportant to me and we would talk about whatever the topic was and he would always give me insightful advice on whatever the topic may be, Me hardly being able to talk to him made this very stressful to me knowing that I can't talk to him about anything important or non important regarding anything, it was super stressful and a terrible feeling I had to endure for long time and the blame for that goes to the family court, they kept me from speaking to the person that always had my best interests. This whole process has traumatized me and I wish I never had to experience this.

My signature



Bryce Emert

## Emert, Bryce

**Rob Emert** <robemert@msn.com>

Mon 5/24/2021 9:04 PM

To: Matthew Cord, Esq. <MCord@apjohnsonesq.com>;Dave Schulman <dschulman@msmfamilylaw.com>
Cc: Catie Young <Catie@GYLFAMILYLAW.COM>;Linda Hansen <lhansen@msmfamilylaw.com>;Sarah Bear <sbear@msmfamilylaw.com>;Correne Day <Correne@GYLFAMILYLAW.COM>

📎 1 attachments (3 MB)
DISQUALIFICATION OF COMMISSIONER RATEKIN 052021.pdf;

Mr. Cord,

Upon Bryce returning to my home after a stay with his mom, he told me the following and that the whole weekend with his mom was a horrible fight. It is heartbreaking for me to hear this stuff and that Bryce is forced to have to put up with it.

1. His mom spit in his face
2. His mom threw popcorn in his face.
3. His mom grabbed him by the hair.
4. His mom was physically rough with him.
5. And, most alarming, that when she was putting him to bed last night that she was crying to him and said he did not have to live with her anymore and that he would not have a room at her house anymore and she was going to take his bed apart and he would not have a bed at her home anymore.

I am sure you will find a way to say it is my or Bryce's fault somehow. Bryce does not have these kinds of problems with anyone else and I have been telling you for a long while now that Andrea has always had a strained relationship with her son. It is not my fault. While Andrea and I have traded insults over the years I would never want Bryce to be without his mother and Bryce knows this very well. Andrea just has issues with a lot and she really is irrationally resentful of me where she wants to burn me more than help our kids. When I stick up for his mom in our discussions, Bryce gets upset with me because Bryce does have many valid concerns on how his mother treats him.

Without me being involved with the kids therapy is a disservice to the kids because you have created a stacked deck. Andrea can say whatever she wants and waive that nonsense court order that says I should not have contact with the one therapist while "the pile on" said it was all therapists. That would create a bias in any reasonable persons/therapists mind. I don't really care that much unless it is a disservice to the kids which it clearly is. And, I highly doubt that Peggy would even agree with how you used her to give Andrea a "tie breaking" vote, removing me from "all" kids therapies, and me getting admonished by the court for involving the kids in divorce related matters when she knows we have both messed up pretty bad in many respects. Whatever I have discussed with the kids in the past was what I would call serious damage control from what Andrea had told them about me or these divorce proceedings. I will get more into that at the next trial day.

Andrea has played everyone for suckers and I guess I am the biggest sucker for doing exactly what she knew I would by calling out everyone in an annoying bombastic way when advocating for my kids. If you really have Bryce's best interests why did you not reach out to his case manager who really is an expert in her field, knows Bryce well and has ZERO to buddy up to me. You spoke to people friendly with

Andrea and who believed Andrea's nonsense with her bogus TRO andrea waived around at the kids school after she was arrested.

Last Thursday I filed a motion to disqualify commissioner Ratekin from these proceedings. With the overwhelming data that will show up in the transcripts, I would be surprise if Judge Wood does not take the case over but nothing really surprises me anymore in divorce court. I attached it just in case you have not seen it yet.

I am right in most regards and I have the truth on my side. It is only a matter of time before the truth comes out and while that may be at the next trial date or an appeal, it will happen eventually. Like I have been saying since day one, I am open to a mediation where the interests of the children would come first and then have that mediator make the finding binding. I think I have put that out there in emails at least 20x plus in the last two years. Given the scenario, why would anyone not want to do that? If I was wrong with my opinions on anything, I would have found out soon enough when the mediator reviewed the facts (and not fancy/questionable divorce moves in court) and made their findings to the parties and that which would have been binding.

Rob Emert



# San Diego County Sheriff's Department
## Public Records Request
### Victim Copy

| | | | |
|---|---|---|---|
| | | Case # | **19157280** | **1** |
| Reported By: | **Emert, Robert Anthony** | Report No. | 19157280.1 | Page 1 of 4 |

---

## GENERAL CASE INFORMATION

Primary Charge: **243 (E)(1) - PC - BATTERY:SPOUSE/EX SPOUSE/DATE/ETC (M)**

| Incident Occ'd Address | | Date/Time Reported |
|---|---|---|
| 1778 Morgans Av, San Marcos, CA 92078 | | 11/03/2019 15:26:40 (Sunday) |
| Occurred Date/Time From | | Call for Service Incident Type |
| 11/03/2019 15:26:00 (Sunday) | | SPOUSAL ABUSE |

---

## VICTIMS

### Victim #1

| Name | | Sex | Age | Injury |
|---|---|---|---|---|
| Emert, Robert Anthony | | M | 50 | N - None |
| Home Address City State Zip | | | | |
| 1778 Morgans Ave, San Marcos, CA 92078 | | | | |
| Victim Of | | | | |
| 243 (EX1) - PC - BATTERY:SPOUSE/EX SPOUSE/DATE/ETC (M) | | | | |

| Employment Status | Occupation/Grade | Employer/School | Employer Address City State Zip |
|---|---|---|---|
| Unemployed | | | |

---

## INDIVIDUAL OFFENSES

| Offense Description | Level | Against | Completed | Counts |
|---|---|---|---|---|
| 243 (EX1) - PC - BATTERY:SPOUSE/EX SPOUSE/DATE/ETC (M) | M | PE | Yes | |

---

## ARRESTEE/S

### Arrestee #1

| Name | Sex | Date of Birth/Age | Height | Weight | Hair Color | Eye Color |
|---|---|---|---|---|---|---|
| Emert, Andrea Lynn | F | 03/04/1971 - 48 | 5' 5" | 160 | BLN | BLU |
| Home Address City State Zip | | | | | | |
| 1778 Morgans Ave, San Marcos, CA 92078 | | | | | | |

| Employment Status | Occupation/Grade | Employer/School | Employer Address City State Zip |
|---|---|---|---|
| Employed | 6th-8th Grade Teacher | Aviara Oaks Middle School | 6880 Ambrosia Ln, Carlsbad, CA 92011 |

### ARREST INFORMATION

| Arrest Type | LE Disposition | | Booking No |
|---|---|---|---|
| D - Probable Cause Arrest - New Case | 3 - Misdemeanor (Adult Only) | 2 - Booked | |
| Arrested For | | | |
| 243 (EX1) - PC - BATTERY:SPOUSE/EX SPOUSE/DATE/ETC (M) | Level: M | Completed: Yes | Count |

| Arrest Date and Time | Arrest Location City State Zip |
|---|---|
| 11/03/2019 16:32:00 | 1778 Morgans Av, San Marcos, CA 92078 |
| Booking Location/Ins | Armed With |
| Vista Detention Facility | 01 - Unarmed |

---

## SUSPECT/S (Not Yet Arrested)

## WITNESSES

### Witness #1

| Name | Sex | Age | Injury |
|---|---|---|---|
| Emert, Bryce | M | 12 | |
| Home Address City State Zip | | | |
| 1778 Morgans Ave, San Marcos, CA 92078 | | | |
| Student | 7th Grade | San Elijo Middle School | Employer Address: 1600 Schoolhouse Way, San Marcos, CA 92078 |

### Witness #2

| Name | Sex | Age | Injury |
|---|---|---|---|
| Emert, Skyler | F | 10 | |

---

| Reporting Officer | Division/Organization | |
|---|---|---|
| SH3371 - CARRENO, JOHN | San Marcos Station | |
| | SAN MARCOS PATROL | |
| Report Date/Time | Status/Approval Date and Time | |
| 11/04/2019 08:43:44 | SH3703 - LOREK, KIRSTIN | |

## DV-100 | Request for Domestic Violence Restraining Order

*You must also complete Form CLETS-001, Confidential CLETS Information, and give it to the clerk when you file this Request.*

Clerk stamps date here when form is filed.

F I L E D

Clerk of the Superior Court

NOV - 4 2019

By: ___

**① Name of Person Asking for Protection:**

Andrea Emert _____ Age: 48

Your lawyer in this case *(if you have one):*

Name: DAVID S. SCHULMAN, CLS-F _____ State Bar No.: 165285

Firm Name: MOORE, SCHULMAN & MOORE, APC

**Address** *(If you have a lawyer for this case, give your lawyer's information. If you do not have a lawyer and want to keep your home address private, give a different mailing address instead. You do not have to give your telephone, fax, or e-mail.):*

Address: 12636 HIGH BLUFF DRIVE, SUITE 200

City: SAN DIEGO _____ State: CA Zip: 92130

Telephone: 858-755-3300 _____ Fax: 858-755-3382

E-Mail Address: dschulman@msmfamilylaw.com

*Fill in court name and street address:*

**Superior Court of California, County of**
SAN DIEGO
325 SOUTH MELROSE DRIVE
SAME AS ABOVE
VISTA, CALIFORNIA 92081
NORTH COUNTY - FAMILY LAW DIVISION

*Court fills in case number when form is filed.*

**Case Number:**
19FL010852N

**② Name of Person You Want Protection From:**

Robert Emert _____

Description of person you want protection from:

Sex: ☒ M ☐ F Height: 6'1 _____ Weight: 180 _____ Hair Color: Brown _____ Eye Color: Blue

Race: Caucasian _____ Age: 50 ___ Date of Birth: 03-10-1969

Address *(if known):* 1778 Morgans Avenue

City: San Marcos _____ State: CA _____ Zip: 92078

**③ Do you want an order to protect family or household members?** ☒ Yes ☐ No

*If yes, list them:*

| Full Name | Sex | Age | Lives with you? | Relationship to you |
|---|---|---|---|---|
| Skylar Emert | F | 10 | ☒ Yes ☐ No | Daughter |
| Bryce Emert | M | 12 | ☒ Yes ☐ No | Son |
| | | | ☐ Yes ☐ No | |

☐ *Check here if you need more space. Attach a sheet of paper and write "DV-100, Protected People" for a title.*

**④ What is your relationship to the person in ②?** *(Check all that apply):*

a. ☒ We are now married or registered domestic partners.

b. ☐ We used to be married or registered domestic partners.

c. ☒ We live together.

d. ☐ We used to live together.

e. ☐ We are related by blood, marriage, or adoption *(specify relationship):* _____

*If you do not have one of these relationships, the court may not be able to consider your request. Read Form DV-500-INFO for help.*

Hi, my name is Bryce Emert and I am writing this because I am being treated very unfairly and I was told by some friends of mine who have divorced parents to write a letter to the judge. My friends told me because I am 14 that the judge should think about what I have to say and what I think helps me the most in my life and that I want to testify so I can tell the truth so I can stop being treated so unfairly. I hope the judge gives me my wants I say in this letter because I do know what I am talking about. I don't understand why nobody is listening to me and it is very unfair and makes me feel very frustrated and angry and sad. I want to live with my dad more and I do not understand why my mom does not let me see and talk to my dad even when she can't be with me and help me. My grades and friendships have just been better when I have some extra time with me dad. I love my mom very much and I know she loves me but it is just so unfair when I need help and she can't help me to keep me from my dad. I know my dad will let me see my mom anytime I want. He lets my sister see our mom anytime she wants to. My mom won't do this for me and it has been very hard for me and has really messed up a lot of my life. My mom says very mean things about my dad. When she is mean to me she says the court gave her more power so my dad can't help me and I better do what she says. She is very mean about this. My mom has done things to me and my friends that I know if my dad did to my sister that my dad would get busted big time. My mom has put bruises on me. She has thrown food in my face. She has flipped of me and my friends. She has driven so bad with my friends in the car when she was mad they had to ask to get out. She does not listen to me when I ask for personal space. She exaggerates the bad stuff I do to everyone and then it seems like everyone watches me extra just waiting to catch me doing something wrong that most of my friends don't get in trouble for. My mom got arrested for doing something wrong to my dad when me my dad and my sister came back from Disneyland. Even though I know she got arrested my mom says she didn't. There is book at my moms house that says something about a narcissist. I googled it. I have heard my mom talk to others badly about my dad and how he is a narcissist. My dad is nice funny and everyone seems to like him except my mom. He is not a narcissist. That is just stupid. My mom takes a lot of pills and she goes from being very happy to very angry very fast. It seems like my mom takes out stuff on me because I remind her of my dad. I know my dad tries his best for me to have a good time with my mom all the time. My dad repeats himself and has done this as long as I can remember. he wants me to think for myself. He wants me to look for the best qualities in my mom. My dad does not try for me to hate my mom. That is just stupid.

I saw a person named Mr. Cord a few times. He told he is my attorney and he said he was going to help me and listen to my problems and try to help me. He has not. The few times I talked to him I could tell he was just taking my moms side. He would not listen to stories I would tell him about my mom doing mean things to me and would try to get me to agree to things I think were not nice to my dad. He lied to me a couple times. I never want to see Matt again. He is a liar and I think he thinks I am stupid or something just because I am a little on the autism spectrum. I told him I wanted to speak to the judge and to talk in court. I told Matt bad things my mom does to me. I told him weird things my moms parents would say and do to me. I told

9/20/21   Bryce Emert

him how I want to be with my dad more because for my whole life my dad has been there to talk to me about everything and this has helped me a lot. I told Matt I wanted another attorney to help me when I could tell he was not going to do anything I asked like stuff with the schedule where it is just not fair to me and what helps me. My dad use to drive me and all my friends around all the time. It was great. I don't get that anymore. My mom seems to want to keep me from my dad and friends. She forces me to spend time with her parents when I don't want to. They make me feel uncomfortable sometimes and it is obvious they don't like my dad.

I have seen a lot of people who say they are some kind of therapist or like a person to talk to about problems. I have seen these people at school and out of school. There has been some helpful nice ones and some who were like Matt who it was just obvious they were trying to get me to say and think what they were telling me and not listening to me. Dr. Olag was like Matt. He talked to me like I am a stupid little kid who does not know what he is talking about. I do know what I am talking about and just sometimes have a hard time saying things. I have made some mistakes and have learned from them and trying to move on. Dr. Olag just kept exaggerating old and small things and talking about the same old stuff every time I would see him. It was very annoying and frustrating and made me sick and angry. My mom does this a lot to. I have heard my mom say bad things about me to a lot of people and she exaggerates bad things I do to everyone. Dr. Olag listens to the lies my mom says and keeps wanting to talk about them. Some are not completely lies but big exaggerations. My friends and sister do things and they get a pass or everyone just kind of ignores the bad stuff. But for me I just keep having to go over it all the time on the stuff friends and my sister get a pass on. This has made me feel so stressed out that I get a stomachache. Dr. Olag acts like he is here to help but he is making me angry and sick by bugging me over old stuff. I think he is just tying to act like I have big problems so he can keep being paid. I never want to see Dr. Olag again. There are lots of other people that are kind and helpful to me. I don't need the creepy dr. Olag around me. he makes me feel very uncomfortable. There are lots of helpful people helping me so I don't need him around me.

I know my mom loves me and I love her but I want to live with my dad more. My mom does not have very much time to hang out with me and does not like to do the things I like to do. She isolates me from my friends and forces me to be with her parents. Even when I need help with homework and she cant help me she wont let me get help from my dad. From talking to my friends about this kind of stuff it just seems like my mom needs to let stuff go so we can all move on. My mom constantly tries to keep me from doing stuff with my dad. It is not fair. I want to live with my dad more because he helps me a lot and I know he will let me see my mom whenever I ask because that is what he does with my sister. My mom won't do this for me or my sister and I don't know why. I feel more at home and comfortable with my dad. Everything just seems more difficult with my mom and it makes me stressed out and feel sick at times. My dad said he cant help me with his letter. I asked others and they got with people I have known for a long time so they could see that I did write this letter and nobody is making me do it and it is just me asking for help.

9/20/21   Bryce Emert



12
3

MC-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| Bryce Emert<br>2351 Vista Lago Terrace<br>Escondido, CA 92029<br><br>TELEPHONE NO.: 760-612-9328   FAX NO. *(Optional)*<br>E-MAIL ADDRESS *(Optional)*: robemert@msn.com<br>ATTORNEY FOR *(Name)* | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   San Diego
STREET ADDRESS   325 S. Melrose Drive
MAILING ADDRESS   325 S. Melrose Drive
CITY AND ZIP CODE   Vista, CA 92081
BRANCH NAME   North County

PLAINTIFF/PETITIONER:   Andrea Emert

DEFENDANT/RESPONDENT:   Robert Emert

| DECLARATION | CASE NUMBER:<br>19FL010852N |
|---|---|

I, Jeff Brown, make the following declaration,

I have known Bryce Emert for approximately six years and know him well as during the approximate six years in knowing him, I would usually see him on average of three times per week.  I am the owner of a Karate Dojo where Bryce Emert was a student for approximately six years.  I spoke with Bryce and am a witness to his declaration to the court dated and signed by him 09/20/21 and I know those are his words without any influence or duress from anyone.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  09/20/21

Jeff Brown
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF DECLARANT)

☐ Attorney for  ☐ Plaintiff  ☐ Petitioner  ☐ Defendant
☐ Respondent  ☒ Other *(Specify):*
witness

DECLARATION

14

MC-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Bryce Emert<br>2351 Vista Lago Terrace<br>Escondido, CA 92029<br><br>TELEPHONE NO.: 760-612-9328   FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*: robemert@msn.com<br>ATTORNEY FOR *(Name)*: | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   San Diego
STREET ADDRESS: 325 S. Melrose Drive
MAILING ADDRESS: 325 S. Melrose Drive
CITY AND ZIP CODE: Vista, CA 92081
BRANCH NAME: North County

PLAINTIFF/PETITIONER: Andrea Emert

DEFENDANT/RESPONDENT: Robert Emert

| DECLARATION | CASE NUMBER:<br>19FL010852N |
|---|---|

I, Leslie Minger, make the following declaration,

I have known Bryce Emert for approximately six years. I spoke with Bryce and I am a witness to his declaration to the court dated and signed by him 09/20/21.  I know those are his words without any influence or duress from anyone.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 09/20/21

Leslie Minger
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF DECLARANT)

☐ Attorney for  ☐ Plaintiff  ☐ Petitioner  ☐ Defendant
☐ Respondent  ☑ Other *(Specify)*:
                        witness

DocuSign Envelope ID: 55EBCF89-CDA6-4E61-852A-038B784E3668

15⁶

MC-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Jamie Learakos, Esq.                294310<br>Cage & Miles, LLP<br>12396 World Trade Drive, Suite 109<br>San Diego, Ca 92128 | |

TELEPHONE NO.: (858) 376-7251    FAX NO. *(Optional)*: (619) 568-6474
E-MAIL ADDRESS *(Optional)*: jlearakos@cageandmiles.com
ATTORNEY FOR *(Name)*: Robert Emert

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Diego
STREET ADDRESS: 325 S. Melrose Drive
MAILING ADDRESS: 325 S. Melrose Drive
CITY AND ZIP CODE: Vista, CA 92081
BRANCH NAME: North County Division

PLAINTIFF/PETITIONER: Andrea L. Emert

DEFENDANT/RESPONDENT: Robert Emert

| DECLARATION | CASE NUMBER:<br>19FL010852N [IMAGED FILE] |
|---|---|

See attached.

To whom it may concern:

I've known Rob Emert for approximately 3.5 years. Our sons have known one another for nearly 7 years.  As our kids' friendship developed, Rob consistently coordinated play dates. Rob puts great effort in helping expose Bryce to a variety of social situations, and helps Bryce navigate the social challenges he experiences. His dedication to helping Bryce grow, learn, and develop is heartwarming.

To this day Rob frequently includes my son (and other kids) in after school, weekend, and summer activities. They have gone to the beach, pool, Waterpark, Disneyland, trampoline parks, and have had countless sleepovers. Most days after school my son is with Rob and Bryce. He has even picked up my youngest son from school when he picks up his daughter. Rob treats my children with the same care and attention as he does his own; I trust Rob completely with caring for my children.

Sincerely,

Leslie Minger

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date:

| Leslie Minger | |
|---|---|
| (TYPE OR PRINT NAME) | (SIGNATURE OF DECLARANT) |

☐ Attorney for    ☐ Plaintiff    ☐ Petitioner    ☐ Defendant
☐ Respondent    ☒ Other *(Specify)*:

Emert, Robert

17/18

MC-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Bryce Emert<br>2351 Vista Lago Terrace<br>Escondido, CA 92029<br><br>TELEPHONE NO.: 760-612-9328   FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):* robemert@msn.com<br>ATTORNEY FOR *(Name):* | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   San Diego
STREET ADDRESS: 325 S. Melrose Drive
MAILING ADDRESS: 325 S. Melrose Drive
CITY AND ZIP CODE: Vista, CA 92081
BRANCH NAME: North County

PLAINTIFF/PETITIONER: Andrea Emert

DEFENDANT/RESPONDENT: Robert Emert

| DECLARATION | CASE NUMBER:<br>19FL010852N |
|---|---|

I, Kevin Kinsella, make the following declaration,

I have known Bryce Emert his whole life.  I spoke with Bryce and am a witness to his declaration to the court dated and signed by him on 09/20/21.  I spoke to Bryce and I know those are his words without any influence or duress from anyone.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: .09/20/21

Kevin Kinsella
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF DECLARANT)

☐ Attorney for   ☐ Plaintiff   ☐ Petitioner   ☐ Defendant
☐ Respondent   ☑ Other *(Specify)*:
   witness

DocuSign Envelope ID: A469FD42-87A5-45E9-A78E-D495EF661CFC

Emert, Robert
19FL010852N

18/19

36MC-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Robert Emert<br>2351 Vista Lago Terrace<br>Escondido, CA 92029<br>TELEPHONE NO.: 760-612-9328   FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional): robemert@msn.com<br>ATTORNEY FOR (Name): Self | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
- ☐ CENTRAL DIVISION, CENTRAL COURTHOUSE, 1100 UNION ST., SAN DIEGO, CA 92101
- ☐ CENTRAL DIVISION, SMALL CLAIMS, 330 W. BROADWAY, SAN DIEGO, CA 92101
- ☐ CENTRAL DIVISION, CIVIL, 330 W. BROADWAY, ROOM 225, SAN DIEGO, CA 92101
- ☒ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92081
- ☐ EAST COUNTY DIVISION, 250 E. MAIN, EL CAJON, CA 92020
- ☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910

PLAINTIFF/PETITIONER: Andrea Emert

DEFENDANT/RESPONDENT: Robert Emert

| DECLARATION | CASE NUMBER:<br>19FL010852N |
|---|---|

To whom it may concern,

My name is Kevin Kinsella. I have been a neighbor and very close family friend for over 20 years of Tom and Glenda Emert (Rob's parents) who reside at 2352 Vista Lago Terrace, Escondido, Ca 92029.

I have always been known as "Uncle Kevin" to Bryce and Skylar (Rob's children). I have been a fixture at the Emert residence for countless weekends, family events and gatherings. During these times I have always observed Rob as a loving and attentive father. Rob postponed a successful career as a mortgage broker to personally attend to the needs of his special needs son Bryce. Now that Bryce is nearing 14 and requires less one on one personal care, Rob is looking forward to resuming his career.

FINANCES: I have known Tom and Glenda to be living on a modest retirement until Glenda inherited a substantial amount of money. While she disclosed the amount to me to ask for financial advice, I know the majority of that money has been spent initially on remodeling the house to provide in home care for Glenda's 88 year old mother, who has passed away, and in assisting Rob's family so he could be a stay at home parent and give Bryce, Robs son who is on the autism spectrum, the added attention that would allow their son to thrive best he could. With the layout of Tom and Glenda's home, the move of Robert and his two children into Tom and Glenda's home was not an easy one and appeared to be the best the family could do given their resources and COVID related issues.

Kevin Kinsella

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 1/19/2021

Kevin Kinsella
_____
(TYPE OR PRINT NAME)

DocuSigned by:

*kevin kinsella*
_____
8D05EAE04B03455
(SIGNATURE OF DECLARANT)

☐ Attorney for   ☐ Plaintiff   ☐ Petitioner   ☐ Defendant
☐ Respondent   ☒ Other (Specify):
20 yr friend of the Emert family

Form Approved for Optional Use<br>Judicial Council of California<br>MC-030 [Rev. January 1, 2006]

DECLARATION

20 21

MC-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Bryce Emert<br>2351 Vista Lago Terrace<br>Escondido, CA 92029<br><br>TELEPHONE NO.: 760-612-9328   FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*: robemert@msn.com<br>ATTORNEY FOR *(Name)*: | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   San Diego
STREET ADDRESS: 325 S. Melrose Drive
MAILING ADDRESS: 325 S. Melrose Drive
CITY AND ZIP CODE: Vista, CA 92081
BRANCH NAME: North County

PLAINTIFF/PETITIONER:  Andrea Emert

DEFENDANT/RESPONDENT:  Robert Emert

| DECLARATION | CASE NUMBER:<br>19FL010852N |
|---|---|

I, Loc Dinh, make the following declaration,

I have known Bryce Emert for approximately nine years. I spoke with Bryce and I am a witness to his declaration to the court dated and signed by him 09/20/21. I know those are his words without any influence or duress from anyone.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  09/20/21

Loc Dinh
_____
(TYPE OR PRINT NAME)                                (SIGNATURE OF DECLARANT)

☐ Attorney for   ☐ Plaintiff   ☐ Petitioner   ☐ Defendant
☐ Respondent   ☑ Other *(Specify)*:
                           witness

DocuSign Envelope ID: 20CB007E-D968-4C9B-9D2D-DF4C97F48170

MC-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Jamie Learakos, Esq.               294310<br>Cage & Miles, LLP<br>12396 World Trade Drive, Suite 109<br>San Diego, Ca 92128<br>TELEPHONE NO: (858) 376-7251   FAX NO.(Optional): (619) 568-6474<br>E-MAIL ADDRESS (Optional): jlearakos@cageandmiles.com<br>ATTORNEY FOR (Name): Robert Emert | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 325 S. Melrose Drive
MAILING ADDRESS: 325 S. Melrose Drive
CITY AND ZIP CODE: Vista, CA 92081
BRANCH NAME: North County Division

PLAINTIFF/PETITIONER: Andrea L. Emert

DEFENDANT/RESPONDENT: Robert Emert

| DECLARATION | CASE NUMBER:<br>19FL010852N [IMAGED FILE] |
|---|---|

See attached.

To whom it may concern,

My wife and I have known Rob and his family for almost seven years now.  We met Rob and his son, Bryce, while our boys attended the same pre-k class.  The boys are 12 now.  As our boys developed a special friendship in pre-k, our families started to get together for various events.  Very soon thereafter, our families have become very close and our families have gathered for almost all our sons birthdays and most holidays such as Easter, Christmas, Halloween and the 4th of July.  Over the approximate past seven years, our families have been there for each other and have developed a great family bond that will likely last a life time.  Currently, Bryce and Gilbert, my son, have taken karate for approximately the past five years together. Rob and I have spent a good amount of time together working out a bit while we waited for the boys to complete their karate lesson.  The karate schedule is usually at least three days a week with the weekday schedule being 5:30 to 6:15 and Saturdays going from 10:30 to 11:30.  The karate dojo also has many other functions we usually attend together.  Rob is God parent to our daughter Danielle and is going to be God parent to our new born son, Dillon.  Rob, me, my wife, Michelle and Rob's mom all put a lot of effort into gathering our families together as much as we can.  My wife and I trust Rob with our children and he trusts us with his.  It is a family bond.  To this day, Rob and our families coordinate many activities such as pool days, days to LegoLand, Trampoline parks and Sea World.  My wife and I trust and have trusted Rob with our children at all these outings when sometimes, it was only him monitoring and safeguarding our son.  We know Rob to be a great Dad who has gone above and beyond trying to be the best Dad he can be for his children.

Over the approximate seven years plus our families have closely know each other, we completely trust Rob.  My wife and I do not drink alcohol.  In the years I have known Rob, I have never known him to drink alcoholic beverages during the week.  In the few times we would see Rob drink beer or wine was only a very few times at family parties where it was in moderation. We do not have alcohol beverages in our home and we would never know if someone we knew was impaired.

sincerely

Loc and Michelle Dinh

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

Loc Dinh
_____
(TYPE OR PRINT NAME)

DocuSigned by:
_Loc Dinh_
_____
(SIGNATURE OF DECLARANT)

☐ Attorney for  ☐ Plaintiff  ☐ Petitioner  ☐ Defendant
☐ Respondent  ☒ Other (Specify):

Form Approved for Optional Use
Judicial Council of California
MC-030 [Rev. January 1, 2006]

CEB Essential Forms

DECLARATION

Emert, Robert

23⁴

MC-030

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Bryce Emert<br>2351 Vista Lago Terrace<br>Escondido, CA 92029<br><br>TELEPHONE NO.: 760-612-9328   FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):* robemert@msn.com<br>ATTORNEY FOR *(Name):* | **FOR COURT USE ONLY** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Diego
STREET ADDRESS: 325 S. Melrose Drive
MAILING ADDRESS: 325 S. Melrose Drive
CITY AND ZIP CODE: Vista, CA 92081
BRANCH NAME: North County

PLAINTIFF/PETITIONER: Andrea Emert

DEFENDANT/RESPONDENT: Robert Emert

| **DECLARATION** | **CASE NUMBER:**<br>19FL010852N |
|---|---|

I, Leo Caro, make the following declaration,

I have known Bryce Emert for approximately seven years. I spoke with Bryce and I am a witness to his declaration to the court dated and signed by him 09/20/21. I know those are his words without any influence or duress from anyone.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 09/20/21

Leo Caro                                      _(signature)_
(TYPE OR PRINT NAME)                    (SIGNATURE OF DECLARANT)

☐ Attorney for   ☐ Plaintiff   ☐ Petitioner   ☐ Defendant
☐ Respondent   ☑ Other *(Specify):*
                          witness

B

GRAND JURY EVIDENCE

GRAND JURY EMERGENCY REPORT OF JUDICIAL FRAUD, OBSTRUCTION OF
GRAND JURY DUE PROCESS, DEPRIVALS OF JURY TRIAL DUE PROCESS,
OBSTRUCTION/PERVERSION OF JUSTICE, THEFT, EXTORTION, FRAUD, RICO, ETC.

DEMANDS FOR CONSTITUTIONAL GRAND JURY DUE PROCESS & JURY TRIAL DUE
PROCESS, FEDERAL GRAND JURY & TASK FORCE INTERVENTION, "HABEUS
CORPUS", ETC. in support and defense of the Constitution of the United States, and oathed to
defend it against all foreign & Domestic Enemies thereof. Via GRAND JURY CERTIORARI,
SUPERSEDEAS, DECLARATORY & INJUNCTIVE RELIEF PREROGATIVES,
MANDAMUS, PROHIBITION, HABEUS CORPUS, CONTRACTUAL OBLIGATION
PERFORMANCE & PROHIBITIONS AGAINST ANY IMPAIRMENT OR FAILURE TO
FULFILL THE OBLIGATIONS THEREOF CONTRACTS, ET AL.

**Name: Robert Emert**
**Address: 2351 Vista Lago Terrace Escondido, CA 92029**
**Telephone #: 760-612-9328**
**Email Address: robemert@msn.com**


[Offending Persons/Agency(s): , Et. Al.]

   **1.  Commissioner Patti Ratekin**
**BAR#159300**
Description: Commissioner who heard the divorce case for about six months; her boss's
wife was friends/co-worker with the petitioner.
   **2.  Lorna Alksne**
**BAR#165273**
Description: Past presiding judge of San Diego.
   **3.  David Schulman**
**BAR#165285**
Description: Mentioned in relation to the complaint; phone number 858-755-3300;
associated with Andrea Schuck/Emert, plaintiff in the divorce petition.
   **4.  Andrea Schuck-Emert**
Phone number: 760-214-8677
Description: Plaintiff in the divorce petition; mentioned in relation to David Schulman.
   **5.  Catie Young**
**BAR#281565**
Description: Attorney for the minor Skylar Emert (13); phone number 858-345-1720.
   **6.  Matt Cord**
**BAR#204917**

Description: Attorney for the minor Bryce Emert (15); phone number 760-639-0187.

**7. Jesse Olague**

**License: California / 30156**

Description: Bryce's psychologist; phone number 858-692-4187.

**8. Alana Robinson**

Description: Mentioned in relation to disqualification; C.C.P Section 170.1 subdivision (a)(6)(C).

**San Diego, CA Superior Court**

**San Diego, CA District Attorney Office**

**DDA Balerio**

**DAI Luis Pena**

[Ref Cse. #'s Et. Al.]

**SD, CA SUPERIOR COURT FAMILY: 19FL010852N**

**Federal Southern CA District CASE NO: 3:23-cv-00230-RSH-AHG**

**CA SUPREME COURT: S280767**

**SD, CA SUPERIOR COURT CRIMINAL: SCD297230**

**California Court of Appeal Case: D079955**

CASE FILES ARE GRAND JURY EVIDENCE IN THESE MATTERS, via GRAND JURY CERTIORARI, SUPERSEDEAS, DECLARATORY & INJUNCTIVE RELIEF PREROGATIVES, MANDAMUS, PROHIBITION, HABEUS CORPUS, ET AL....ETC., THOSE LISTED AND OTHERWISE CONNECTED BY RELEVANCE, AS LAW DIRECTS AND DEMANDS

[Commonly Referenced As: "The Matter of ]

CORRUPT OBSTRUCTION of (1) Proper grand jury due process and (2) the right to proper trial by jury guarantees, has been used against me, by the various offending parties in this/these matters, to deprive me of my constitutionally guaranteed rights to due process, and to among other things, my right to life, liberty, and the pursuit of happiness/property, contractual rights, to be secure and free in a safe, free, and secure land, wherein I receive constitutional jury trial due process upon allegations against me, and upon allegations I make concerning wrongdoing

towards me/mine.

It is this deprival of constitutionally guaranteed grand and trial jury due process that has been used against myself and others (known to be happening to others, and estimated to be happening to hundreds of thousands of victims currently in this country), to commit theft, embezzlement, and extortion against me, and to prohibit constitutional redress of grievance by me for wrongdoings being committed and ongoing against me. As existing warrants prove*, I have been subjected to a system that illegally takes freedom, children, family members, bank accounts, property, real estate, security and other assets----WITHOUT GRAND JURY INDICTMENT AND PRESENTMENT, WITHOUT JURY TRIAL, AND WITHOUT THE ADHERANCE TO CONSTITUTIONAL RIGHTS, LAWS, ETC., AND ILLEGALLY AWARDS THESE PROTECTED POSSESSIONS AND PERSONS TO THE ILLEGAL BENEFIT AND REWARD OF CRIMINALS AND CRIMINALLY ACTING BAR MEMBERS, COURT INSIDERS, JUDGES, AND CO-CONSPIRATORS (*additional protected evidence at AdequacyAssurance@yahoo.com, CAND, et al.). Any and all of my legal resistances to these felony criminal acts and atrocities, multi-million dollar thefts, void pretended authority judgements, mock trials, organized crime RACKETS, etc., have been met with disdain, illegal punishments, obstruction, illegal dismissals, etc., without the required to be provided to me RIGHT TO TRIAL BY JURY. This is an existing CULTURE OF RACKETEERING CORRUPTION IN THE LEGAL COMMUNITIES, BAR ASSOCIATIONS, AND JUDICIARIES, ETC., undermining to our national security, and the health and wellbeing of both myself and the nation as a whole---AND PROHIBITED BY THE RICO ACT OF 1970, 18 U.S.C. §§ 1961–1968; AND OTHER VARIOUS PENAL STATUTES, STATE AND FEDERAL.


I AM A CURRENT VICTIM OF CRIME, SPECIFICALLY HUMAN TRAFFICKING VIA THE ILLEGAL WITHOLDING OF THE RIGHT TO TRIAL BY JURY AND WITHHOLDING OF PROPER GRAND JURY DUE PROCESS. THEFT OF THESE MINIMUM RIGHTS OF DUE PROCESS HAVE ILLEGALLY ALLOWED ME AND LOVED ONES TO BE VICTIMIZED BY CRIMES, SPECIFICALLY EXTORTION, THEFT, AND HUMAN TRAFFICKING, ETC. BY JUDICIAL FRAUD AND BAR ASSOCIATION FRAUD, CRIMES THAT I HAVE A RIGHT TO BE FREE AND FREED FROM. Crime investigations and prosecution processes are currently hijacked and systematically thwarted throughout this country, in violation of STATE AND FEDERAL LAW.

BY KEEPING THE GRAND JURY FROM THE REPORTS, investigation and prosecution of matters, keeping them from the information, reports, etc.,....the decisions of who does and doesn't get investigated or prosecuted, what criminals or crime rings (even, and especially, 'judicially' and 'attorney' operating crime rings) are or aren't allowed to continue, etc., is instead illegally left up to the 'arbitrary decision' of an entity, person or persons, other than the grand

jury, and leads to and has caused unaccountability and rampant corruption throughout our state and national institutions, govt. offices, courts, etc., and the widespread industrial scale victimization and suffering of innocent persons, including myself as here in this/these cases. (All government documents, investigation reports, court filings, actions, registers, 'prosecutions', findings, decisions, etc., ARE THE JURISDICTION OF THE PROPERLY JURISDICATED GRAND JURY OF THE REALM----INCLUDING ALL COURT FILINGS, OBJECTIONS, PETITIONS, OPINIONS, 'PROPOSED ORDERS', INFORMATIONS, FINDINGS, POLICE REPORTS, DISTRICT ATTORNEY NOTES & REPORTS/RECORDS----ARE THE DECISION AND JURISDICTION OF THE GRAND JURY OF THE REALM/DISTRICT, AND KEEPING THE GRAND JURIES FROM EXERCISING DECISIONS OF WHETHER TO CHARGE OR NOT TO CHARGE, WEIGHING THE EVIDENCE, ETC., IS A FEDERAL CRIME, OBSTRUCTION OF JUSTICE, GRAND JURY TAMPERING, AS WELL AS RICO. AND WHAT IS GOING ON IN OUR COUNTRY THIS VERY INSTANCE/INSTANT.

BY DENYING THE RIGHT TO TRIAL BY JURY (Grand Jury deputized 'trial juries', deputized and impaneled, via the authority of the District Grand Jury, bifurcated, to specifically apply jurisdiction, over a certain cause, but not necessarily limited thereto that cause, 'an additional grand jury/jury-panel of the district', the people's sovereignty represented and safeguarded....), likewise keeps the decisions of who is or isn't allowed to sue or be sued, what criminals or crime rings are or aren't allowed to use the court system as a tool to commit theft (even, and especially, 'judicially' and 'attorney' operating crime rings), extortion, human trafficking, racketeering, etc., which persons or organizations are or aren't allowed to use our courts to recover damages, receive due process, be protected, hold wrongdoers accountable, etc. (and thereby deciding which persons or organizations, types of persons or types of organizations, can or cant engage and continue to engage in fraudulent and negligent practices, crimes, etc.) instead left up to the 'decision' of an entity, person or persons, other than the deputized trial juries, and leads to and has caused illegal prosecutions, illegal penalties, illegal imprisonments often without trial at all, unaccountability and rampant corruption throughout our state and national institutions, govt. offices, courts, etc., and the widespread industrial scale victimization and suffering of innocent persons, including myself as here in this/these cases. **(See, Kids for Cash Scandal, US v CIAVARELLA, US 3RD CIR. Ct Ap., No. 11-3277)**

Now, often, as in my case/cases, these same exact entities and individuals that are committing the crimes against me and others, are the same entities and individuals illegally restricting access to the jury trial, and obstructing proper grand jury function, obstructing/perverting justice, jury, witness, and evidence tampering, etc., all crimes prohibited by the RICO Acts, etc.,......THE REASON PROPER GRAND AND TRIAL JURY FUNCTION AND RIGHTS ADHERANCE IS CONSTITUTIONALLY AND STATUTORILY MANDATED. (US Constitution, Arts. 1-6, Amdts 1-14, et al., 18 U.S.C. §§ 1961–1968; THE RICO, SHERMAN, AND HOBBS ACTS, ETC. )

These offending parties have usurped and attempted to entirely supplant the jurisdiction of the Grand and Trial Juries, so that they may, in addition to escaping justice for the crime of doing just that (GRAND AND TRIAL JURY OBSTRUCTION, TAMPERING, IMPEDING, ETC.), likewise commit crimes in and out of court, "illegally traffic in persons and stolen/extorted/embezzled properties, assets, and funds", and "jury, witness, and evidence tamper", etc., and completely escape justice, investigation, and prosecution for these continuing crime sprees (as they are the one's obstructing true relief apparatuses, and claiming to self regulate, although not being done, and highly illegal), as has been done to me herein these cases. The grand jury, in addition to doing its due diligence in investigation, subpoena/demands, issuing bills, indictments, warrants, etc., likewise has an obligation in protecting and safeguarding it's sovereignty, supremacy over all things governmental, it's supersedence, it's jurisdiction over all matters...... to likewise follow these matters through any bifurcated trials, to ensure that jury trial due process is adhered to, and that trial, sentencing and execution and completion of said "sentences"/imprisonments/seizures, etc. is not tampered, perverted, or otherwise criminally obstructed, TO SEE AND MAKE SURE THAT JUSTICE IS SERVED.


In addition to relief and to be liberated from these mock trials, void judgements, obstructed investigatory and prosecutorial apparatuses (continuing in violation of art 6 USCONS. et al, to act as if due jury trial due process has been had, when it hasn't.....), criminally controlled mock 'appellate' apparatuses (continuing in violation of art 6 USCONS. et al, to act as if due jury trial due process has been had, when it hasn't.....), theft rackets, and fraudulent 'imprisonments', etc., likewise I am entitled to return of properties and/or persons taken, monetary damage compensation at triple penalty (under the RICO ACTS, et al., including pain and suffering in addition to actual, sustained, and expected damages, etc.), arrests of criminally derived assets, arrests of offending parties and of their assets, etc., as the evidence in this/these case(s) and controlling law clearly provides for and mandates. These out of control due process denying 'counterfeit judicial', et al. based national security undermining, threatening, and rebelling THEFT RACKETS are beyond doubt necessitating of federal task force grand jury based/overseen interventions and receiverships, etc..... aka isolated, stopped, corrected (including victim equitization, restoration, etc.), and continued monitoring, etc.


I certify, under penalties for perjury, these are true and correct statements, and that I have been subjected to fraudulent prosecution/processes in these matters, and that I have had persons and/or property in excess of $1,000,000 stolen from me without due jury trial process of law, justice has been obstructed, and I have illegally been denied a trial by jury, etc., all in violation of state and federal law, and that I am lawfully entitled to relief.

By: *ROBERT EMERT*

08/28/23

Supportive Brief

I AM A VICTIM OF COURT CORRUPTION, DENIALS OF JURY TRIAL, AND MY
ASSETS/PROPERTY HAVE BEEN STOLEN AND EXTORTED FROM ME, CONTRARY
TO THE UNITED STATES CONSTITUTION.

THERE ARE WIDESPREAD ORGANIZED VIOLATIONS OF CONSTITUTIONAL & CIVIL
RIGHTS GOING ON ACROSS THE COUNTRY, TO DEPRIVE CITIZENS OF LIFE
LIBERTY AND PROPERTY/HAPPINESS-PURSUIT, BY DEPRIVING THEM OF
CONSTITUTIONAL JURY TRIAL DUE PROCESS, SUBJECTING THEM TO MOCK
TRIALS, TO THEN ILLEGALLY AWARD THEIR PROPERTY AND OTHER ASSETS TO
THE ILLEGAL BENEFIT OF ORGANIZED CRIMINAL GANGS, IN VIOLATION OF THE
RICO ACTS---- AND THE FEDERAL AND STATE GOVERNMENT AGENCIES AND
OTHERWISE ARE OBSTRUCTING AND TAMPERING THE PROPER INVESTIGATIONS
AND PROSECUTIONS OF THESE PROVEN WARRANTS AND CRIMES, ALLOWING
THESE CRIME ENTITIES TO CONTINUE, WITH ZERO ACCOUNTABILITY, AND TO
ROB THE AMERICAN PEOPLE.

I have been a victim of unconstitutional activities in our local, state, and/or federal courts. No
jury trial due process, illegal activities in family/custody/divorce/probate etc. courts, illegal
restraining orders, illegal property seizures, illegal attorney/judge embezzlement/exploitation, no
jury trial due process to gain justice for those illegalities, or compensation. THE COURTS ARE
BEING RAN UNCONSTITUTIONALLY, AS A MONEY MAKING RACKET.---We deserve
the right to jury trials in court, and the right to access and report government corruption and
crime to the grand juries!!!! Litigants/Citizens/Defendants and their children/parents are being
subjected to fraudulent theft rings of attorneys and judges, unfair rigged proceedings/mock-trials,
criminal penalties and arrest without the benefit of proper representation, without the required
beyond doubt evidence threshold burden of proof satisfied against us, without notice of charges,
and without jury trial due process, etc.-----AND EVEN BEING PROHIBITED FROM
PRESENTING EVIDENCE OR SPEAKING IN OUR COURTS. (See and Apply: "The
Racketeer Influenced and Corrupt Organizations (RICO) Act is a United States federal law that
provides for extended criminal penalties and a civil cause of action for acts performed as part of
an ongoing criminal organization. RICO was enacted by section 901(a) of the Organized Crime
Control Act of 1970 (Pub. L. 91–452, 84 Stat. 922, enacted October 15, 1970) and is codified at
18 U.S.C. ch. 96 as 18 U.S.C. §§ 1961–1968;" 42 USC 1994, et al.)

N1 These offenses have largely, if not altogether been admitted to by these state and federal

position holders and oathed participants ART6 SEC2-3, et al., including by non-answer or non-rebuttal, making my/our continued objections/demands the admitted law/fact of the case/cases, and as federally recognized, being harangued in fraudulent state court sham 'proceedings' undoubtedly tolls related to any assertions of time bar. Even in explicitly 'criminal' proceedings, let alone 'civil' proceedings, statute of limitation claims are not a bar to 'jurisdiction', the ability of the jury/grand-jury to fairly hold one to answer for wrongdoing. And likewise even while engaged in non corrupted state court proceedings, start dates of time bar dispositive periods for Federal filings are tolled. Any assertions of time bar, would certainly hold no weight, when the defendants attempting to make such non-jurisdiction-barring assertions were in fact engaged in obstructing justice, and the very functioning of the justice/corrective/trial processes, CORRUPTION OF THE COURT & JUSTICE SYSTEM, DEPRIVING OF GRAND AND TRIAL JURY FUNCTION, extrinsic fraud of the court & justice system (Unclean Hands Bars the defense asserted by the one/ones having caused said objected to condition, one cannot benefit from his own wrongdoing, nor are such non-explicit codal expressions absolute, nor can they be used to frustrate justice, the law, nor national security) . Unique circumstances of mass Corruption and corruption in positions of power and authority, such as those contained herein these matters, allow the jury wide latitude in departure from certain codal 'norms', in it's pursuit of punishing and correcting crimes and criminals/wrongdoers---- in it's pursuit of fulfilling contractual obligations. The jurisdiction is ultimately that of, and must be retained by, the grand and trial juries of the realm/district, in support and defense of the Constitution of the United States, and oathed to defend it against all foreign & Domestic Enemies thereof. (See, Kids for Cash Scandal, US v CIAVARELLA, US 3RD CIR. Ct Ap., No. 11-3277, 18 U.S.C. ch. 96 as 18 U.S.C. §§ 1961–1968;" 42 USC 1994, et al.)

N2 Even The Supreme Court of the United States has recognized, that not even they can issue juryless orders affecting the rights of US Citizens, even upon non-private individuals, and even when the subject matter 'result' of the proposed order is factually supported, and unopposed, and even when Congress has passed explicit legislation directing that they shall----because said judgements against are reserved Constitutionally to the grand and trial juries findings. (Marbury v. Madison, 5 US 137 - Supreme Court 1803)

N3 In addition, "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection."(Marbury v. Madison, 5 US 137 - Supreme Court 1803)